# Exhibit A



**null / ALL**
**Transmittal Number: 27671977**
**Date Processed: 09/19/2023**

# Notice of Service of Process

| | |
|---|---|
| Primary Contact: | Chuck Pollak<br>Progress Software Corporation<br>15 Wayside Rd<br>Ste 400<br>Burlington, MA 01803-4620 |
| Electronic copy provided to: | Stephen Faberman |

| | |
|---|---|
| **Entity:** | Progress Software Corporation<br>Entity ID Number  3486484 |
| **Entity Served:** | Progress Software Corporation |
| **Title of Action:** | Caery Evangelist, Ph.D. vs. State of Oregon, by and through its Department of Transportation |
| **Matter Name/ID:** | Caery Evangelist, Ph.D. vs. State of Oregon, by and through its Department of Transportation (14620712) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Class Action |
| **Court/Agency:** | Marion County Circuit Court, OR |
| **Case/Reference No:** | 23CV34800 |
| **Jurisdiction Served:** | Oregon |
| **Date Served on CSC:** | 09/18/2023 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Olsen Barton LLC<br>503-468-5573 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com



OLSEN BARTON LLC
ATTORNEYS

Paul B. Barton
Direct Dial: (503) 558-5293
paul@olsenbarton.com

September 15, 2023

**HAND DELIVERY – VIA PROCESS SERVER**

Progress Software Corporation
c/o Corporation Service Company
1127 Broadway Street NE, Suite 310
Salem, OR 97301

Re:     *Caery Evangelist, Ph.D. and Brian J. Els, Ph.D. v. State of Oregon, by and through its Department of Transportation; and Progress Software Corporation*
Marion County Circuit Court, Case No. 23CV34800

Dear Registered Agent:

This firm represents Plaintiffs Caery Evangelist, Ph.D. and Brian J. Els, Ph.D. as local counsel in the above-referenced action.

We enclose copies of the following documents for service upon you as registered agent for Defendant Progress Software Corporation:

1. Summons;
2. Class Action Complaint filed in Marion County Circuit Court on August 25, 2023;
3. Plaintiffs' First Set of Requests for Production of Documents to Defendants; and
4. Plaintiffs' First Requests for Admission to Defendants.

Respectfully,

PBB:dgm
Encls.

cc:     Mr. Edward Ciolko (via email)
Mr. William B. Federman (via email)
Ms. Jennifer S. Czeiler (via email)

4035 Douglas Way, Suite 200, Lake Oswego, OR 97035    **Office:** 503.468.5573    **Fax:** 503.820.2933    www.olsenbarton.com

1

2

3

4

IN THE CIRCUIT COURT OF THE STATE OF OREGON

5

FOR THE COUNTY OF MARION

6

7

8

9

10

11

12

13

14

| | |
|---|---|
| **CAERY EVANGELIST, Ph.D. and BRIAN J. ELS, Ph.D.,** on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>            v.<br><br>**STATE OF OREGON,** by and through its Department of Transportation; **AND PROGRESS SOFTWARE CORPORATION,**<br><br>                    Defendant. | Case No.: 23CV34800<br><br>**SUMMONS** |

15

16

17

**TO:    Defendant Progress Software Corporation**
**c/o Corporation Service Company**
**1127 Broadway Street NE, Suite 310**
**Salem, Oregon 97301**

18      IN THE NAME OF THE STATE OF OREGON: You are required to appear and to

19  defend against the Complaint filed against you in this case within thirty (30) days from the date

20  of service of this Summons upon you. If you fail to appear and to defend, Plaintiffs will apply to

21  the Court for the relief demanded in the Complaint.

22                    **NOTICE TO DEFENDANT:**

23                    **READ THESE PAPERS**

24                      **CAREFULLY!**

25      You must "appear" in this case or the other side will win automatically. To "appear" you

26  must file with the court a legal document called a "motion" or "answer." The "motion" or

---

Page 1 – SUMMONS

"answer" must be given to the court clerk or administrator within thirty (30) days along with the required filing fee. It must be in proper form and have proof of service on the Plaintiffs' attorney or, if the Plaintiffs do not have an attorney, proof of service on the Plaintiffs.

If you have questions, you should see an attorney immediately. If you need help in finding an attorney, you may contact the Oregon State Bar's Lawyer Referral Service online at www.oregonstatebar.org or by calling (503) 684-3763 (in the Portland metropolitan area) or toll-free elsewhere in Oregon at (800) 452-7636.

DATED: September 15, 2023

OLSEN BARTON LLC

Paul B. Barton, Trial Attorney, OSB No. 100502
paul@olsenbarton.com
Alex Graven, OSB No. 153443
alex@olsenbarton.com
4035 Douglas Way, Suite 200
Lake Oswego, OR 97035
Tel: (503) 468-5573 | Fax: (503) 820-2933
*Attorneys for Plaintiffs*

Page 2 – SUMMONS

1        I certify that I have prepared this copy of the Summons and that I have carefully

2   compared this copy with the original. I further certify that this is a true, exact, complete, and

3   correct copy of the original. The post office address at which papers in this action may be served

4   upon Plaintiffs by mail is: 5 Centerpointe Drive, Suite 220, Lake Oswego, OR 97035;

5   Phone (503) 468-5573.

6        DATED: September 15, 2023

7        OLSEN BARTON LLC

8

9        Paul B. Barton, Trial Attorney, OSB No. 100502

10       paul@olsenbarton.com
     Alex Graven, OSB No. 153443

11       alex@olsenbarton.com
     4035 Douglas Way, Suite 200

12       Lake Oswego, OR  97035

13       Tel: (503) 468-5573 | Fax: (503) 820-2933
     *Attorneys for Plaintiffs*

14

15

16

17

18

19

20

21

22

23

24

25

26

Page 3 – SUMMONS

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MARION

| | |
|---|---|
| **CAERY EVANGELIST, Ph.D. and BRIAN J. ELS, Ph.D.,** on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**STATE OF OREGON,** by and through its Department of Transportation; **AND PROGRESS SOFTWARE CORPORATION,**<br><br>Defendant. | Case No.:  **23CV34800**<br><br>**CLASS ACTION COMPLAINT (Negligence; Breach of Contract; Unjust Enrichment; Violation of UTPA; Violation of Drivers Privacy Protection Act)**<br><br>**FEE AUTHORITY:** ORS 21.160(1)(e)<br><br>**CLAIMS NOT SUBJECT TO MANDATORY ARBITRATION**<br><br>**(12-Person Jury Trial Requested)** |

## CLASS ACTION COMPLAINT

Plaintiffs Caery Evangelist, Ph.D. and Brian J. Els, Ph.D. (collectively, "Plaintiffs"), individually and on behalf of all similarly situated persons, allege the following against Defendants Progress Software Corporation ("PSC") and the State of Oregon, by and through its Department of Transportation ("ODOT") (collectively, "Defendants") based upon personal knowledge with respect to themselves and on information and belief derived from, among other things, investigation by Plaintiffs' counsel and review of public documents as to all other matters:

///

///

///

Page 1 – CLASS ACTION COMPLAINT

1

## I.    **INTRODUCTION**

2    1.    Plaintiffs bring this class action against Defendants for their failure to properly

3  secure and safeguard Plaintiffs' and approximately *3.5 million* other similarly situated

4  individuals' names, home and mailing addresses, license or identification numbers, and the last

5  four digits of Social Security numbers (the "Private Information" or "PII"[1]) from the well-known

6  Russian cybergang, Cl0p ("Clop").[2]

7    2.    PSC, which is a software company offering a range of products and services to

8  government and corporate entities across the country and around the world, including cloud

9  hosting and secure file transfer services such as MOVEit file transfer and MOVEit cloud.

10    3.    A critical zero-day[3] flaw in PSC's MOVEit software led to a wave of cyber-

11  attacks against organizations who collected the sensitive PII of Plaintiffs and the Class.[4] Multiple

12  organizations have now confirmed data breaches, including ODOT.[5]

13

14

15

16

17

18

19  [1] Personally Identifiable Information.

20  [2] *See* https://www.oregon.gov/odot/DMV/Documents/OCIPA-Letter.pdf (official notification
21  letter from ODOT).

22  [3] "A zero-day vulnerability is a vulnerability in a system or device that has been disclosed but is
   not yet patched. An exploit that attacks a zero-day vulnerability is called a zero-day exploit." *See*
23  https://www.trendmicro.com/vinfo/us/security/definition/zero-day-vulnerability.

24  [4] *See* https://www.techtarget.com/searchsecurity/news/366539672/MoveIt-Transfer-flaw-leads-
25  to-wave-of-data-breach-disclosures

26  [5] *Id.*

Page 2 – CLASS ACTION COMPLAINT

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR 97035
Tel: 503-468-5573 | Fax: 503-820-2933

4.      On or about May 31, 2023, PSC posted a notice on its website confirming a recently discovered SQL injection vulnerability related to its MOVEit Transfer and MOVEit Cloud file transfer services resulting from a breach in its network and systems (the "Data Breach").[6] In its website notice, it states that the vulnerability in the MOVEit Transfer and Cloud web application resulting from the Data Breach "could lead to escalated privileges and potential unauthorized access to the environment."[7]

5.      PSC and ODOT have yet to send direct notice to those impacted by the Data Breach, which gives criminals a head start on using Plaintiffs' and the Class's PII for nefarious purposes.

6.      The Private Information compromised in the Data Breach included highly sensitive data that represents a gold mine for data thieves. Armed with the Private Information accessed in the Data Breach, data thieves can commit a variety of sordid crimes including, *e.g.*, opening new financial accounts in Class Members' names, taking out loans in Class Members' names, using Class Members' names to obtain medical services, using Class Members' information to obtain government benefits, filing fraudulent tax returns using Class Members' information, obtaining driver's licenses in Class Members' names but with another person's photograph, and giving false information to police during an arrest.

7.      Plaintiffs and the Class entrusted their PII to ODOT, who then provided their PII to PSC. **Both** Defendants willingly accepted the responsibility to adequately secure, safeguard, and maintain the PII of Plaintiffs and the Class.

---

[6] *See* https://community.progress.com/s/article/MOVEit-Transfer-Critical-Vulnerability-31May2023.

[7] *Id.*

Page 3 – CLASS ACTION COMPLAINT

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR  97035
Tel: 503-468-5573 | Fax: 503-820-2933

8.   There has been no assurance offered by PSC nor ODOT that PSC has adequately enhanced its data security practices sufficient to avoid a similar vulnerability in its MOVEit Transfer products and services in the future.

9.   Similarly, ODOT has not stated it will terminate its relationship with PSC nor that it is even evaluating its relationship with PSC.

10.   Therefore, Plaintiffs and Class Members have suffered and are at an imminent, immediate, and continuing increased risk of suffering ascertainable losses in the form of harm from identity theft and other fraudulent misuse of their Private Information, out-of-pocket expenses incurred to remedy or mitigate the effects of the Data Breach, and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach.

11.   Plaintiffs bring this class action lawsuit to address Defendants' inadequate safeguarding of Class Members' Private Information that they maintained and Defendants' failure to provide timely and adequate notice to Plaintiffs and Class Members of the types of information that were accessed, and that such information was subject to unauthorized access by cybercriminals.

12.   The improper disclosure and theft of Plaintiffs' and Class Members' Private Information was a known risk to Defendants. Specifically, ODOT knew that if it did not select a vendor with adequate data security that Plaintiffs' and the Class's PII would be unlawfully exposed, and PSC was on notice that failing to take necessary steps to secure the Private Information it possessed left it vulnerable to an attack and left Plaintiffs' and the Class's PII at risk.

13.   Upon information and belief, PSC failed to properly monitor its networks and systems and failed to properly implement adequate data security practices, procedures, infrastructure, and protocols with regard to the computer network and systems that housed the Private Information of Plaintiffs and the Class. Had PSC properly monitored and secured its networks, the Data Breach would not have happened.

Page 4 – CLASS ACTION COMPLAINT

14.    Upon information and belief, ODOT failed to properly inquire about PSC's data security before entrusting it with Plaintiffs' and the Class's PII, and ODOT failed to monitor and oversee PSC's data security throughout their relationship. Had ODOT properly inquired about PSC's data security, oversaw PSC's data security, and monitored PSC's data security, Plaintiffs' and the Class's PII would not have been exposed by PSC.

15.    Plaintiffs' and Class Members' identities are now at risk because of Defendants' negligent conduct as the Private Information that Defendants collected and maintained is now in the hands of data thieves and other unauthorized third parties. Indeed, there is no question that well-known cybergang, Clop, has stolen Plaintiffs' and the Class's PII.[8]

16.    Plaintiffs seek to remedy these harms on behalf of themselves and all similarly situated individuals whose Private Information was accessed and/or compromised during the Data Breach.

## II.    PARTIES

17.    Plaintiff **Caery Evangelist, Ph.D.** is, and at all times mentioned herein was, an individual citizen of the State of Oregon.

18.    Plaintiff **Brian J. Els, Ph.D.** is, and at all times mentioned herein was, an individual citizen of the State of Oregon.

19.    Defendant **PSC** claims to be a secure file transfer services software company with its principal place of business located at 15 Wayside Rd, Suite 400, Burlington, Massachusetts 01803, and is incorporated in the State of Massachusetts. However, PSC is registered as a foreign corporation in the State of Oregon.[9]

---

[8] *See* https://www.oregon.gov/odot/DMV/Pages/Data_Breach.aspx.

[9] *See* https://egov.sos.state.or.us/br/pkg_web_name_srch_inq.show_detl?p_be_rsn=1803427 &p_srce=BR_INQ&p_print=FALSE.

Page 5 – CLASS ACTION COMPLAINT

20.     Defendant **ODOT** is a state agency of the State of Oregon. ODOT is headquartered at 355 Capitol Street NE, MS 11, Salem, OR 93701-3871.

21.     Pursuant to ORS 30.275, commencement of this action by Plaintiffs, who are the claimants, within 180 days after their alleged loss and injury serves as notice of their claim to ODOT in compliance with the Oregon Tort Claims Act.

## III.     JURISDICTION AND VENUE

22.     This Court has jurisdiction over the Parties and this case. Plaintiffs are citizens and residents of Oregon. ODOT is a state agency of the State of Oregon, both Defendants engage in regular, sustained business in Marion County and the State of Oregon in general. ODOT maintains its principal place of business in Marion County. PSC is registered to do business in the State of Oregon with the Oregon Secretary of State. Moreover, substantial acts in furtherance of the alleged improper conduct occurred within Marion County, Oregon and had and continue to have a profound effect in Marion County, Oregon. Therefore, jurisdiction and venue are proper in Marion County, Oregon. ORS 14.080(2); ORS 14.060.

23.     Plaintiffs bring this action pursuant to ORCP 32 individually and on behalf of those similarly situated to protect and seek redress for themselves and those who suffered from the Data Breach.

## IV.     FACTUAL ALLEGATIONS

### A. *Defendants' Business and Collection of Plaintiffs' and Class Members' Private Information*

24.     PSC is a software company offering a range of products and services to government and corporate entities across the country and around the world, including cloud hosting and secure file transfer services such as MOVEit file transfer and MOVEit cloud. ODOT hired PSC as a vendor and/or third-party contractor to utilize the services PSC provides.

///

///

Page 6 – CLASS ACTION COMPLAINT

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR 97035
Tel: 503-468-5573 | Fax: 503-820-2933

25.     ODOT develops programs related to the State of Oregon's system of highways, roads, bridges, railways, public transportation, transportation safety, driver and vehicle licensing, and motor carrier regulation.[10]

26.     In the regular course of ODOT's business, and specifically to furnish driver's licenses and/or identification cards to Plaintiffs and the Class, PSC collects and stores the highly sensitive PII of Plaintiffs and the Class. In turn, ODOT discloses the PII it receives from Plaintiffs and the Class to PSC to utilize the file transfer services PSC offers through the MOVEit Software. Thus, PSC requires ODOT to entrust it with highly sensitive personal information belonging to individuals like Plaintiffs and the Class.

27.     Because of the highly sensitive and personal nature of the information PSC and ODOT collect, acquire, and store, Defendants promised to, among other things: keep Plaintiffs' and the Class's PII private; comply with industry standards related to data security; only use and release highly sensitive information stored on their servers for reasons that relate to the services they provide; and provide adequate notice to individuals if their Private Information is disclosed without authorization.

28.     By obtaining, collecting, using, and deriving a benefit from Plaintiffs' and Class Members' Private Information, Defendants assumed legal and equitable duties and knew or should have known that they were ***both*** responsible for protecting Plaintiffs' and Class Members' Private Information from unauthorized disclosure and exfiltration.

29.     Plaintiffs and Class Members relied on Defendants to keep their Private Information confidential and securely maintained and to only make authorized disclosures of this information, which Defendants ultimately failed to do.

**B.  *The Data Breach and Defendants' Inadequate Notice to Plaintiffs and Class Members***

30.     Upon information and belief, the unauthorized cybercriminals accessed a cache of highly sensitive Private Information through the Data Breach, including but not limited to,

---

[10] *See* https://www.oregon.gov/odot/About/Pages/Mission.aspx.

Page 7 – CLASS ACTION COMPLAINT

names, home and mailing addresses, driver's license numbers or identification numbers, and the last four digits of Social Security numbers. However, ODOT explicitly states on their website "[w]e don't know exactly what data was accessed by the breach…."[11]

31. The information stolen by Clop in the Data Breach is especially egregious because the PII stolen cannot be easily changed or replaced. Indeed, ODOT states it will not change a victim's driver's license number or ID number "unless there is proof that [their] name and number were used in committing a fraudulent act."[12]

32. Defendants had obligations created by contract, industry standards, common law, and representations made to Plaintiffs and Class Members to keep Plaintiffs' and Class Members' Private Information confidential and to protect it from unauthorized access and disclosure.

33. Plaintiffs and Class Members provided their Private Information to ODOT with the reasonable expectation and mutual understanding that ODOT would comply with its obligations to keep such Information confidential and secure from unauthorized access and to provide timely notice of any security breaches.

34. Plaintiffs and the Class also provided their PII to ODOT with the reasonable expectation and mutual understanding that ODOT would not hand over their PII to a third party with inadequate data security and would continue to ensure their PII was being protected by any third party hired by monitoring and overseeing the third parties ODOT gave access to Plaintiffs' and the Class's PII.

35. Defendants' data security obligations were particularly important given the substantial increase in cyberattacks in recent years, including recent similar attacks against secure

---

[11] See https://www.oregon.gov/odot/DMV/Pages/Data_Breach.aspx.

[12] Id.

Page 8 – CLASS ACTION COMPLAINT

1  file transfer companies like Accellion and Fortra carried out by the same Russian cyber gang,

2  Clop.[13]

3      36.    Thus, Defendants knew or should have known that their electronic records would

4  be targeted by cybercriminals.

5  **C. PSC and ODOT Failed to Comply with FTC Guidelines**

6      37.    The Federal Trade Commission ("FTC") has promulgated numerous guides for

7  businesses which highlight the importance of implementing reasonable data security practices.

8  According to the FTC, the need for data security should be factored into all business decision

9  making. Indeed, the FTC has concluded that a company's failure to maintain reasonable and

10  appropriate data security for consumers' sensitive personal information is an "unfair practice" in

11  violation of Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. *See, e.g.,*

12  *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

13      38.    In October 2016, the FTC updated its publication, *Protecting Personal*

14  *Information: A Guide for Business*, which established cybersecurity guidelines for businesses. The

15  guidelines note that businesses should protect the personal information that they keep, properly

16  dispose of personal information that is no longer needed, encrypt information stored on computer

17  networks, understand their network's vulnerabilities, and implement policies to correct any

18  security problems. The guidelines also recommend that businesses use an intrusion detection

19  system to expose a breach as soon as it occurs, monitor all incoming traffic for activity indicating

20  someone is attempting to hack into the system, watch for large amounts of data being transmitted

21  from the system, and have a response plan ready in the event of a breach.

22      39.    The FTC further recommends that companies not maintain PII longer than is

23  needed for authorization of a transaction, limit access to sensitive data, require complex passwords

24

25

26  [13] *See* https://www.bleepingcomputer.com/news/security/global-accellion-data-breaches-linked-to-clop-ransomware- gang/; *see also* https://www.bleepingcomputer.com/news/security/fortra-shares- findings-on-goanywhere-mft-zero-day-attacks/.

Page 9 – CLASS ACTION COMPLAINT

1  to be used on networks, use industry-tested methods for security, monitor the network for

2  suspicious activity, *and verify that third-party service providers, like PSC, have implemented*

3  *reasonable security measures*.

4      40.    The FTC has brought enforcement actions against businesses for failing to

5  adequately and reasonably protect customer data by treating the failure to employ reasonable and

6  appropriate measures to protect against unauthorized access to confidential consumer data as an

7  unfair act or practice prohibited by the FTCA. Orders resulting from these actions further clarify

8  the measures businesses must take to meet their data security obligations.

9      41.    As evidenced by the Data Breach, PSC and ODOT failed to properly implement

10  basic data security practices. Defendants' failure to employ reasonable and appropriate measures

11  to protect against unauthorized access to Plaintiffs' and Class Members' Private Information

12  constitutes an unfair act or practice prohibited by Section 5 of the FTCA.

13      42.    Defendants were at all times fully aware of their obligation to protect the Private

14  Information of Plaintiffs and Class Members yet failed to comply with such obligations.

15  Defendants were also aware of the significant repercussions that would result from its failure to

16  do so.

17  **D.  *Defendants Failed to Comply with Industry Standards***

18      43.    As noted above, experts studying cybersecurity routinely identify businesses as

19  being particularly vulnerable to cyberattacks because of the value of the Private Information which

20  they collect and maintain.

21      44.    Some industry best practices that should be implemented by businesses like PSC

22  include but are not limited to educating all employees, strong password requirements, multilayer

23  security including firewalls, anti-virus and anti-malware software, encryption, multi-factor

24  authentication, backing up data, and limiting which employees can access sensitive data. As

25  evidenced by the Data Breach, PSC failed to follow some or all these industry best practices.

26

Page 10 – CLASS ACTION COMPLAINT

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR 97035
Tel: 503-468-5573 | Fax: 503-820-2933

45.    Other best cybersecurity practices that are standard in the industry include: installing appropriate malware detection software; monitoring and limiting network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protecting physical security systems; and training staff and customers regarding these points. As evidenced by the Data Breach, PSC failed to follow these cybersecurity best practices.

46.    PSC failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

47.    PSC failed to comply with these accepted standards, thereby permitting the Data Breach to occur.

**E.  *PSC and ODOT Breached Their Duties to Safeguard Plaintiffs' and Class Members' Private Information***

48.    In addition to its obligations under federal and state laws, PSC and ODOT owed a duty to Plaintiffs and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons.

49.    PSC owed a duty to Plaintiffs and Class Members to provide reasonable data security, including complying with industry standards and requirements, training for its staff, and ensuring that its computer systems, networks, and protocols adequately protected the Private Information of Class Members.

///

///

Page 11 – CLASS ACTION COMPLAINT

50.    ODOT owed a duty to Plaintiffs and Class Members to safeguard their PII and ensure any vendor/contractors/third parties it hired maintained adequate data security. This duty also required ODOT to oversee and monitor all vendor/contractors/third parties it hired.

51.    ` Defendants breached their duties and obligations owed to Plaintiffs and Class Members and/or were otherwise negligent and reckless because they failed to properly maintain and safeguard Plaintiffs' and the Class's PII. Defendant's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

    a.    PSC failing to maintain an adequate data security system that would reduce the risk of data breaches and cyberattacks;

    b.    PSC and ODOT failing to adequately protect Plaintiffs' and the Class's Private Information;

    c.    PSC failing to properly monitor its own data security systems for existing intrusions;

    d.    ODOT failing to properly oversee and monitor PSC;

    e.    ODOT failing to ensure PSC had adequate data security prior to entering into a contractual relationship with PSC;

    f.    PSC failing to sufficiently train its employees regarding the proper handling of its customers' files containing the Private Information;

    g.    PSC failing to fully comply with FTC guidelines for cybersecurity in violation of the FTCA;

    h.    Defendants failing to adhere to industry standards for cybersecurity as discussed above; and

    i.    Defendants otherwise breaching duties and obligations to protect Plaintiffs' and Class Members' Private Information.

52.    ODOT negligently and unlawfully failed to safeguard Plaintiffs' and Class Members' Private Information by allowing a third-party with inadequate data security, PSC,

Page 12 – CLASS ACTION COMPLAINT

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR 97035
Tel: 503-468-5573 | Fax: 503-820-2933

1  access to Plaintiffs' and the Class's PII and by failing to oversee and monitor PSC and its data

2  security throughout the course of their relationship.

3          53.     PSC negligently and unlawfully failed to safeguard Plaintiffs' and Class Members'

4  Private Information by allowing cyberthieves to access its computer network, systems, and servers

5  which contained unsecured and unencrypted Private Information.

6          54.     Had PSC remedied the deficiencies in its information storage and security systems,

7  followed industry guidelines, and adopted security measures recommended by experts in the field,

8  it could have prevented intrusion into its information storage and security systems and, ultimately,

9  the theft of Plaintiffs' and Class Members' confidential Private Information.

10         55.     Had ODOT properly vetted PSC before retaining PSC's services and adequately

11  monitored and oversaw PSC, it could have prevented the exposure of Plaintiffs' and Class

12  Members' PII in the Data Breach because it never would have been in the hands of PSC to begin

13  with.

14         56.     Accordingly, Plaintiffs' and Class Members' lives were severely disrupted. What's

15  more, they have been harmed because of the Data Breach and now face an increased risk of

16  future harm that includes, but is not limited to, fraud and identity theft. Plaintiffs and Class

17  Members also lost the benefit of the bargain they made with Defendants.

18  **F.  *Defendants Should Have Known that Cybercriminals Target PII to Carry Out Fraud and***
       ***Identity Theft***

19

20         57.     The FTC hosted a workshop to discuss "informational injuries," which are injuries

21  that consumers like Plaintiffs and Class Members suffer from privacy and security incidents such

22  as data breaches or unauthorized disclosure of data.[14] Exposure of highly sensitive personal

23

24  _____

25  [14] *FTC Information Injury Workshop, BE and BCP Staff Perspective,* Federal Trade Commission,
    (October 2018), *available at* https://www.ftc.gov/system/files/documents/reports/ftc-
    informational-injury-workshop-be-bcp-staff-
26  perspective/informational_injury_workshop_staff_report_-_oct_2018_0.pdf.

Page 13 – CLASS ACTION COMPLAINT

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR 97035
Tel: 503-468-5573 | Fax: 503-820-2933

1    information that a consumer wishes to keep private may cause harm to the consumer, such as the

2    ability to obtain or keep employment. Consumers' loss of trust in e-commerce also deprives them

3    of the benefits provided by the full range of goods and services available which can have negative

4    impacts on daily life.

5       58.    Any victim of a data breach is exposed to serious ramifications regardless of the

6    nature of the data that was breached. Indeed, the reason why criminals steal information is to

7    monetize it. They do this by selling the spoils of their cyberattacks on the black market to identity

8    thieves who desire to extort and harass victims or to take over victims' identities in order to engage

9    in illegal financial transactions under the victims' names. Indeed, Clop has already begun

10   extorting companies.[15]

11      59.    Because a person's identity is akin to a puzzle, the more accurate pieces of data an

12   identity thief obtains about a person, the easier it is for the thief to take on the victim's identity or

13   to otherwise harass or track the victim. For example, armed with just a name and date of birth, a

14   data thief can utilize a hacking technique referred to as "social engineering" to obtain even more

15   information about a victim's identity, such as a person's login credentials or Social Security

16   number. Social engineering is a form of hacking whereby a data thief uses previously acquired

17   information to manipulate individuals into disclosing additional confidential or personal

18   information through means such as spam phone calls and text messages or phishing emails.

19      60.    In fact, as technology advances, computer programs may scan the Internet with a

20   wider scope to create a mosaic of information that may be used to link compromised information

21   to an individual in ways that were not previously possible. This is known as the "mosaic effect."

22   Names and dates of birth, combined with contact information like telephone numbers and email

23

24

25

26   [15] *See* https://www.bleepingcomputer.com/news/security/clop-ransomware-gang-starts-extorting-moveit-data-theft-victims/.

Page 14 – CLASS ACTION COMPLAINT

1  addresses, are very valuable to hackers and identity thieves as it allows them to access users' other

2  accounts.

3        61.    Thus, even if certain information was not purportedly involved in the Data Breach,

4  the unauthorized parties could use Plaintiffs' and Class Members' Private Information to access

5  accounts, including, but not limited to, email accounts and financial accounts, to engage in a wide

6  variety of fraudulent activity against Plaintiffs and Class Members.

7        62.    For these reasons, the FTC recommends that identity theft victims take several

8  time-consuming steps to protect their personal and financial information after a data breach,

9  including contacting one of the credit bureaus to place a fraud alert on their account (and an

10  extended fraud alert that lasts for 7 years if someone steals the victim's identity), reviewing their

11  credit reports, contacting companies to remove fraudulent charges from their accounts, placing a

12  freeze on their credit, and correcting their credit reports.[16] However, these steps do not guarantee

13  protection from identity theft but can only mitigate identity theft's long-lasting negative impacts.

14        63.    Identity thieves can also use stolen personal information such as Social Security

15  numbers for a variety of crimes, including credit card fraud, phone or utilities fraud, bank fraud,

16  to obtain a driver's license or official identification card in the victim's name but with the thief's

17  picture, to obtain government benefits, or to file a fraudulent tax return using the victim's

18  information. In addition, identity thieves may obtain a job using the victim's Social Security

19  number, rent a house in the victim's name, receive medical services in the victim's name, and even

20  give the victim's personal information to police during an arrest resulting in an arrest warrant being

21  issued in the victim's name.

22        64.    PII can be used to detect a specific individual. PII is a valuable property right. Its

23  value is axiomatic, considering the value of big data in corporate America and the consequences

24

25

26  [16] *See IdentityTheft.gov,* Federal Trade Commission, *available at*
    https://www.identitytheft.gov/Steps.

Page 15 – CLASS ACTION COMPLAINT

of cyber thefts (which include heavy prison sentences). Even this obvious risk-to-reward analysis illustrates beyond doubt that PII has considerable market value.

65. The U.S. Attorney General stated in 2020 that consumers' sensitive personal information commonly stolen in data breaches "has economic value."[17] The increase in cyberattacks, and attendant risk of future attacks, was widely known and completely foreseeable to the public and to anyone in Defendants' industry, including Defendants.

66. The PII of consumers remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, PII can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[18] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web and that the "*fullz*" (a term criminals who steal credit card information use to refer to a complete set of information on a fraud victim) sold for $30 in 2017.[19] It is also particularly troublesome that Driver's licenses were exposed in this Data Breach because they are also sold on the dark web for as much as $20.00.[20]

67. Furthermore, even information such as names, email addresses and phone numbers, can have value to a hacker. Beyond things like spamming customers, or launching phishing attacks

---

[17] *See Attorney General William P. Barr Announces Indictment of Four Members of China's Military for Hacking into Equifax*, U.S. Dep't of Justice, Feb. 10, 2020, available at https://www.justice.gov/opa/speech/attorney-general-william-p-barr      announces-indictment-fourmembers-china-s-military.

[18] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at*: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/.

[19] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, *available at*: https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-   dark-web/.

[20] *Id.*

Page 16 – CLASS ACTION COMPLAINT

using their names and emails, hackers, *inter alia*, can combine this information with other hacked data to build a more complete picture of an individual.  It is often this type of piecing together of a puzzle that allows hackers to successfully carry out phishing attacks or social engineering attacks. This is reflected in recent reports, which warn that "[e]mail addresses are extremely valuable to threat actors who use them as part of their threat campaigns to compromise accounts and send phishing emails."[21]

68.    The Dark Web Price Index of 2022, published by PrivacyAffairs[22] shows how valuable just email addresses alone can be, even when not associated with a financial account:

| Email Database Dumps | Avg. Price USD (2022) |
|---|---|
| 10,000,000 USA email addresses | $120 |
| 600,000 New Zealand email addresses | $110 |
| 2,400,000 million Canada email addresses | $100 |

69.    Beyond using email addresses for hacking, the sale of a batch of illegally obtained email addresses can lead to increased spam emails.  If an email address is swamped with spam, that address may become cumbersome or impossible to use, making it less valuable to its owner.

70.    The value of PII is increasingly evident in our digital economy.  Many companies including PSC collect PII for purposes of data analytics and marketing. These companies collect it to better target customers, and share it with third parties for similar purposes.[23]

---

[21] *See* https://www.magicspam.com/blog/dark-web-price-index-the-cost-of-email-data/.

[22] *See* https://www.privacyaffairs.com/dark-web-price-index-2022/.

[23] *See* https://robinhood.com/us/en/support/articles/privacy-policy/.

Page 17 – CLASS ACTION COMPLAINT

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR  97035
Tel: 503-468-5573 | Fax: 503-820-2933

71.    One author has noted: "Due, in part, to the use of PII in marketing decisions, commentators are conceptualizing PII as a commodity. Individual data points have concrete value, which can be traded on what is becoming a burgeoning market for PII."[24]

72.    Consumers also recognize the value of their personal information and offer it in exchange for goods and services. The value of PII can be derived not only by a price at which consumers or hackers actually seek to sell it, but rather by the economic benefit consumers derive from being able to use it and control the use of it.

73.    A consumer's ability to use their PII is encumbered when their identity or credit profile is infected by misuse or fraud. For example, a consumer with false or conflicting information on their credit report may be denied credit. Also, a consumer may be unable to open an electronic account where their email address is already associated with another user.  In this sense, among others, the theft of PII in the Data Breach led to a diminution in value of the PII.

74.    Data breaches, like that at issue here, damage consumers by interfering with their fiscal autonomy. Any past and potential future misuse of Plaintiffs' PII impairs their ability to participate in the economic marketplace.

75.    A study by the Identity Theft Resource Center[25] shows the multitude of harms caused by fraudulent use of PII:

---

[24] See John T. Soma, *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ('PII') Equals the "Value" of Financial Assets,* 15 Rich. J. L. & Tech. 11, 14 (2009).

[25] Steele, Jason, *Credit Card and ID Theft Statistics*, CreditCards.com (October 23, 2017), *available at* https://www.creditcards.com/credit-card-news/credit-card-security-id-theft-fraud-statistics-1276/.

Page 18 – CLASS ACTION COMPLAINT

Americans' expenses/disruptions as a result of criminal activity in their name (2016)

| | |
|---|---|
| I had to request government assistance | 29.5% |
| I had to borrow money | 60.7% |
| Had to use my savings to pay for expenses | 32.8% |
| Couldn't qualify for a home loan | 32.8% |
| I lost my home/place of residence | 31.1% |
| I couldn't care for my family | 34.4% |
| Had to rely on family/friends for assistance | 49.2% |
| Lost out on an employment opportunity | 44.3% |
| Lost time away from school | 19.7% |
| Missed time away from work | 55.7% |
| Was generally inconvenienced | 73.8% |
| Other | 23% |
| None of these | 3.3% |

Source: Identity Theft Resource Center    creditcards.com

76.     It must also be noted that there may be a substantial time lag between when harm occurs and when it is discovered, and also between when PII and/or personal financial information is stolen and when it is used. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:[26]

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

77.     PII is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black market" for years.

///

///

---

[26] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO (June 2007), *available at* https://www.gao.gov/assets/270/262904.html.

Page 19 – CLASS ACTION COMPLAINT

78.    As a result, Plaintiffs and Class Members are at an increased risk of fraud and identity theft for many years into the future. Thus, Plaintiffs and Class Members have no choice but to vigilantly monitor their accounts for many years to come.

**G. *Plaintiffs' Individual Experiences***

**_Plaintiff Caery's Experience_**

79.    Plaintiff Caery is a resident of the State of Oregon and was required to disclose her PII to ODOT to receive an Oregon driver's license and/or identification card through the Oregon Department of Transportation. Thus, ODOT acquired, collected, and stored Plaintiffs' and Class Members' PII.

80.    By virtue of ODOT's relationship with PSC, PSC also acquired, collected, and stored Plaintiffs' and Class Members' PII through the MOVEit Software services it provided to ODOT.

81.    Defendants were in possession of Plaintiff Caery's PII before, during, and after the Data Breach.

82.    Defendants were obligated by law, regulations, and guidelines to protect Plaintiff Caery's and the Class's PII and ODOT was required to ensure PSC maintained adequate data security, infrastructure, procedures, and protocols for Plaintiffs' and the Class's PII.

83.    In or around June 2023, Plaintiff Caery and the Class received notice of the data breach from ODOT via public announcements made on the internet, television, and/or radio alerting them of the Data Breach and that their Private Information was at risk. PSC and ODOT have failed to send direct notice of the Data Breach to those impacted. Defendants have not provided any remedial services, such as free credit monitoring services, to those affected by the Data Breach.

84.    As a direct and traceable result of the Data Breach, Plaintiff Caery has spent approximately **20 hours** addressing the fallout of the Data Breach. Specifically, Plaintiff Caery has made reasonable efforts to mitigate the impact of the Data Breach, including, but not limited

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR 97035
Tel: 503-468-5573 | Fax: 503-820-2933

1 to: (i) researching the Data Breach; (ii) reviewing credit reports and financial account statements

2 for fraud; (iii) researching credit monitoring and identity theft protection services; and (iv)

3 purchasing, with her own funds, additional credit monitoring as a result of the Data Breach. This

4 is valuable time Plaintiff Caery would have otherwise spent on other activities, including, but not

5 limited to, work, recreation, or time with her family. However, this is not the end. Plaintiff Caery

6 and the Class will now be forced to expend additional time to review their credit reports and

7 monitor their accounts for the rest of their lives.

8      85.     Plaintiff Caery places significant value in the security of her PII and does not

9 readily disclose it. Plaintiff Caery entrusted her PII to Defendants with the understanding that

10 Defendants would keep her information secure and that Defendants would employ reasonable

11 and adequate security measures to ensure that her PII would not be compromised.

12      86.     Likewise, Plaintiff Caery entrusted her PII to ODOT with the understanding that

13 ODOT would not hire entities to provide technology services that did not employ adequate data

14 security, such as PSC.

15      87.     As a direct and traceable result of the Data Breach, Plaintiff Caery suffered actual

16 damages such as: (i) lost time related to monitoring her accounts for fraudulent activity; (ii) loss

17 of privacy due to her PII being exposed to cybercriminals; (iii) loss of the benefit of the bargain

18 because Defendants did not adequately protect her PII; (iv) severe emotional distress because

19 identity thieves now possess her PII; (v) exposure to increased and imminent risk of fraud and

20 identity theft now that her PII has been exposed; (vi) the loss in value of her PII due to her PII

21 being in the hands of cybercriminals who can use it at their leisure; and (vii) other economic and

22 non-economic harm.

23      88.     Also, as a direct and traceable result of the Data Breach, Plaintiff Caery has been

24 and will continue to be at a heightened and substantial risk of future identity theft and its

25 attendant damages for *years* to come. Such a risk is certainly real and impending, and is not

26 speculative, given the highly sensitive nature of the PII compromised by the Data Breach.

---

Page 21 – CLASS ACTION COMPLAINT

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR 97035
Tel: 503-468-5573 | Fax: 503-820-2933

89.     As a result of the Data Breach, Plaintiff Caery has suffered emotional distress due to the release of her PII, due to the fact that she believed Defendants would protect her PII from unauthorized access and disclosure, but utterly failed to do so. Plaintiff Caery has suffered anxiety about unauthorized parties viewing, selling, and/or using her Personal Information for purposes of identity theft and fraud. Knowing that thieves intentionally targeted and stole her PII, including her driver's license information and picture, and knowing that her PII is likely available on the dark web, has caused Plaintiff Caery great anxiety beyond mere worry. Specifically, Plaintiff has lost hours of sleep, is in a constant state of stress, is very frustrated, and is in a state of persistent worry now that her PII has been exposed in the Data Breach. Plaintiff Caery remains very concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

90.     Plaintiff Caery has a continuing interest in ensuring that her PII which, upon information and belief, remains in the possession of Defendants, is protected, and safeguarded from future data breaches.

91.     As a direct and traceable result of the Data Breach, Plaintiff Caery will continue to be at heightened risk for financial fraud, identity theft, other forms of fraud, and the attendant damages, for years to come and will have to pay an identity monitoring company for the rest of her life to protect her exposed PII.

***Plaintiff Els's Experience***

92.     Plaintiff Els is a resident of the State of Oregon and was required to disclose his PII to ODOT to receive an Oregon driver's license and/or identification card through the Oregon Department of Transportation. Thus, ODOT acquired, collected, and stored Plaintiffs' and Class Members' PII.

93.     By virtue of ODOT's relationship with PSC, PSC also acquired, collected, and stored Plaintiffs' and Class Members' PII through the MOVEit Software services it provided to ODOT.

Page 22 – CLASS ACTION COMPLAINT

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR 97035
Tel: 503-468-5573 | Fax: 503-820-2933

94.     Defendants were in possession of Plaintiff Els's PII before, during, and after the Data Breach.

95.     Defendants were obligated by law, regulations, and guidelines to protect Plaintiff Els's and the Class's PII and ODOT was required to ensure PSC maintained adequate data security, infrastructure, procedures, and protocols for Plaintiffs' and the Class's PII.

96.     In or around June 2023, Plaintiff Els and the Class received notice of the data breach from ODOT via public announcements made on the internet, television, and/or radio alerting them of the Data Breach and that their Private Information was at risk. PSC and ODOT have failed to send direct notice of the Data Breach to those impacted. Defendants have not provided any remedial services, such as free credit monitoring services, to those affected by the Data Breach.

97.     As a direct and traceable result of the Data Breach, Plaintiff Els has spent approximately *20 hours* addressing the fallout of the Data Breach. Specifically, Plaintiff Els has made reasonable efforts to mitigate the impact of the Data Breach, including, but not limited to: (i) researching the Data Breach; (ii) reviewing credit reports and financial account statements for fraud; and (iii) researching credit monitoring and identity theft protection services. This is valuable time Plaintiff Els would have otherwise spent on other activities, including, but not limited to, work, recreation, or time with his family. However, this is not the end. Plaintiff Els and the Class will now be forced to expend additional time and funds to review their credit reports and monitor their accounts for the rest of their lives.

98.     Plaintiff Els places significant value in the security of his PII and does not readily disclose it. Plaintiff Els entrusted his PII to Defendants with the understanding that Defendants would keep his information secure and that Defendants would employ reasonable and adequate security measures to ensure that his PII would not be compromised.

///

///

Page 23 – CLASS ACTION COMPLAINT

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR 97035
Tel: 503-468-5573 | Fax: 503-820-2933

99.    Likewise, Plaintiff Els entrusted his PII to ODOT with the understanding that ODOT would not hire entities to provide technology services that did not employ adequate data security, such as PSC.

100.    As a direct and traceable result of the Data Breach, Plaintiff Els suffered actual damages such as: (i) lost time related to monitoring his accounts for fraudulent activity; (ii) loss of privacy due to his PII being exposed to cybercriminals; (iii) loss of the benefit of the bargain because Defendants did not adequately protect his PII; (iv) severe emotional distress because identity thieves now possess his PII; (v) exposure to increased and imminent risk of fraud and identity theft now that his PII has been exposed; (vi) the loss in value of his PII due to his PII being in the hands of cybercriminals who can use it at their leisure; and (vii) other economic and non-economic harm.

101.    Also, as a direct and traceable result of the Data Breach, Plaintiff Els has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for *years* to come. Such a risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the PII compromised by the Data Breach.

102.    As a result of the Data Breach, Plaintiff Els has suffered emotional distress due to the release of his PII, due to the fact that he believed Defendants would protect his PII from unauthorized access and disclosure, but utterly failed to do so. Plaintiff Els has suffered anxiety about unauthorized parties viewing, selling, and/or using his Personal Information for purposes of identity theft and fraud. Knowing that thieves intentionally targeted and stole his PII, including his driver's license information and picture, and knowing that his PII is likely available on the dark web, has caused Plaintiff Els great anxiety beyond mere worry. Specifically, Plaintiff Els has lost hours of sleep, is in a constant state of stress, is very frustrated, and is in a state of persistent worry now that his PII has been exposed in the Data Breach. Plaintiff Els remains very concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

Page 24 – CLASS ACTION COMPLAINT

103.    Plaintiff has a continuing interest in ensuring that his PII which, based on information and belief, remains in the possession of Defendants, is protected, and safeguarded from future data breaches.

104.    As a direct and traceable result of the Data Breach, Plaintiff Els will continue to be at heightened risk for financial fraud, identity theft, other forms of fraud, and the attendant damages, for years to come and will have to pay an identity monitoring company for the rest of his life to protect his exposed PII.

**H. *Plaintiffs' and Class Members' Damages***

105.    Plaintiffs and the Class have suffered actual injury in the form of time spent dealing with the Data Breach and the increased risk of fraud resulting from the Data Breach, among the damages described above.

106.    Plaintiffs and the Class would not have provided their PII to ODOT had ODOT disclosed it would surrender their PII to a third-party with inadequate data security, such as PSC, and would not oversee or monitor PSC once their PII was transferred to PSC.

107.    Additionally, Plaintiffs and the Class would not have permitted their PII to be provided to ODOT and then PSC had ODOT and/or PSC timely disclosed that PSC's file transfer servers lacked adequate data security to safeguard their PII which was exposed in the Data Breach.

108.    Plaintiffs and the Class suffered actual injury in the form of having their Private Information compromised and/or stolen as a result of the Data Breach.

109.    Plaintiffs and the Class suffered actual injury in the form of damages to and diminution in the value of their Private Information – a form of intangible property that Plaintiffs and the Class entrusted to ODOT.

110.    Plaintiffs and the Class suffered imminent and impending injury arising from the substantially increased risk of future fraud, identity theft, and misuse posed by her Private Information being placed in the hands of criminals.

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR  97035
Tel: 503-468-5573 | Fax: 503-820-2933

111. Plaintiffs and the Class have a continuing interest in ensuring that their Private Information, which remains in Defendants' possession and stored within Defendants' systems, is protected, and safeguarded from future breaches and third parties with inadequate data security.

112. As a result of the Data Breach, Plaintiffs and the Class have already made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to, researching the Data Breach, reviewing financial accounts for any indications of actual or attempted identity theft or fraud, and researching long-term credit monitoring options they will now need to use.

113. Plaintiffs and the Class also suffered actual injury as a result of the Data Breach in the form of (a) damage to and diminution in the value of their Private Information, a form of property that Defendant obtained from them; (b) violation of their privacy rights; and (c) present, imminent, and impending injury arising from the increased risk of identity theft, and fraud they now face.

114. In sum, Plaintiffs and Class Members have been damaged by the compromise of their Private Information in the Data Breach.

115. Plaintiffs' and the Class's Private Information was subsequently compromised as a direct and proximate result of the Data Breach, which Data Breach resulted from ODOT's failure to ensure the third-party it hired had adequate data security, from ODOT's failure to oversee and monitor the third-party it hired, and PSC's inadequate data security practices.

116. As a direct and proximate result of Defendants' actions and omissions, Plaintiffs and Class Members have been harmed and are at an imminent, immediate, and continuing increased risk of harm, including but not limited to, having loans opened in their names, tax returns filed in their names, utility bills opened in their names, credit card accounts opened in their names, and other forms of fraud and identity theft.

117. Plaintiffs and Class Members also face a substantial risk of being targeted in future phishing, data intrusion, and other illegal schemes through the misuse of their Private Information,

Page 26 – CLASS ACTION COMPLAINT

1  since potential fraudsters will likely use such Private Information to carry out such targeted

2  schemes against Plaintiffs and Class Members.

3    118.    The Private Information maintained by and stolen from Defendants, combined

4  with publicly available information, allows nefarious actors to assemble a detailed mosaic of

5  Plaintiffs and Class Members, which can also be used to carry out targeted fraudulent schemes

6  against Plaintiffs and Class Members.

7    119.    Additionally, as a direct and proximate result of PSC's conduct, Plaintiffs and Class

8  Members have also been forced to take the time and effort to mitigate the actual and potential

9  impact of the Data Breach on their everyday lives, including placing "freezes" and "alerts" with

10  credit reporting agencies, contacting their financial institutions, closing or modifying financial

11  accounts, and closely reviewing and monitoring bank accounts and credit reports for unauthorized

12  activity for years to come.

13    120.    Plaintiffs and Class Members may also incur out-of-pocket costs for protective

14  measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs

15  directly or indirectly related to the Data Breach.

16    121.    Plaintiffs and Class Members also suffered a loss of value of their Private

17  Information when it was accessed, viewed, and acquired by Clop in the Data Breach. Numerous

18  courts have recognized the propriety of loss of value damages in related cases. An active and robust

19  legitimate marketplace for Private Information also exists.[27] In 2019, the data brokering industry

20  was worth roughly $200 billion. In fact, the data marketplace is so sophisticated that consumers

21  can sell their non-public information directly to a data broker who in turn aggregates the information and

22

23

24

25  _____

26  [27] *See* Data Coup, https://datacoup.com/.

Page 27 – CLASS ACTION COMPLAINT

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR  97035
Tel: 503-468-5573 | Fax: 503-820-2933

provides it to other companies.[28] Consumers who agree to provide their web browsing history to the Nielsen Corporation can in turn receive up to $50 a year.[29]

122.    As a result of the Data Breach, Plaintiffs' and Class Members' Private Information, which has an inherent market value in both legitimate and illegal markets, has been harmed and diminished due to its acquisition by cybercriminals. This transfer of valuable information happened with no consideration paid to Plaintiffs or Class Members for their property, resulting in an economic loss. Moreover, the Private Information is apparently readily available to others, and the rarity of the Private Information has been destroyed because it is no longer only held by Plaintiffs and the Class Members, and because that data no longer necessarily correlates only with activities undertaken by Plaintiffs and the Class Members, thereby causing additional loss of value.

123.    Finally, Plaintiffs and Class Members have suffered or will suffer actual injury as a direct and proximate result of the Data Breach in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach. These losses include, but are not limited to, the following:

     a.    Monitoring for and discovering fraudulent charges;

     b.    Canceling and reissuing credit and debit cards;

     c.    Addressing their inability to withdraw funds linked to compromised accounts;

     d.    Taking trips to banks and waiting in line to obtain funds held in limited accounts;

     e.    Spending time on the phone with or at a financial institution to dispute fraudulent charges;

---

[28] *What is digi.me?, DIGI.ME,* https://digi.me/what-is-digime/.

[29] *Frequently Asked Questions,* Nielsen Computer & Mobile Panel, https://computermobilepanel.nielsen.com/ui/US/en/faqen.html (last visited on June 20, 2023).

Page 28 – CLASS ACTION COMPLAINT

f.  Contacting financial institutions and closing or modifying financial accounts;

g.  Resetting automatic billing and payment instructions from compromised credit and debit cards to new ones;

h.  Paying late fees and declined payment fees imposed as a result of failed automatic payments that were tied to compromised cards that had to be cancelled; and

i.  Closely reviewing and monitoring bank accounts and credit reports for additional unauthorized activity for years to come.

124.  Moreover, Plaintiffs and Class Members have a continuing interest in ensuring that their Private Information, which is believed to still be in the possession of Defendants, is protected from future additional breaches by the implementation of more adequate data security measures and safeguards, including but not limited to, ensuring that the storage of data or documents containing personal and financial information is not accessible online, that access to such data is password- protected, and that such data is properly encrypted.

125.  As a direct and proximate result of Defendants' actions and inactions, Plaintiffs and Class Members have suffered a loss of privacy and have suffered cognizable harm, including an imminent and substantial future risk of harm, in the forms set forth above.

## V.  CLASS ACTION ALLEGATIONS

126.  Plaintiffs bring this action individually and on behalf of all other persons similarly situated, pursuant to ORCP 32.

127.  Specifically, Plaintiffs propose the following Nationwide Class (referred to herein as the "Class" or "Class Members"), subject to amendment as appropriate:

*Nationwide Class*

All individuals who reside in the United States whose Private Information was exposed in the Data Breach involving ODOT and PSC.

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR  97035
Tel: 503-468-5573 | Fax: 503-820-2933

*Oregon Subclass*

All individuals who reside in Oregon whose Private Information
was exposed in the Data Breach involving ODOT and PSC.

128. Excluded from the Class are Defendants and their parents or subsidiaries, any entities in which they have a controlling interest, as well as their officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns. Also excluded is any Judge to whom this case is assigned as well as their judicial staff and immediate family members.

129. Plaintiffs reserve the right to modify or amend the definitions of the proposed Nationwide Class, as well as add subclasses, before the Court determines whether certification is appropriate.

130. The proposed Class meets the criteria for certification under ORCP 32.

131. <u>Numerosity</u>. The Class Members are so numerous that joinder of all members is impracticable. Though the exact number and identities of Class Members are unknown at this time, based on information and belief, the Class likely consists of millions of individuals whose data was compromised in the Data Breach. The identities of Class Members are ascertainable through PSC's and ODOT's records.

132. <u>Commonality</u>. There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

        a. Whether PSC and ODOT engaged in the conduct alleged herein;

        b. When PSC and ODOT learned of the Data Breach;

        c. Whether PSC's and ODOT's response to the Data Breach was adequate;

        d. Whether PSC and ODOT unlawfully lost or disclosed Plaintiffs' and Class Members' Private Information;

///
///

Page 30 – CLASS ACTION COMPLAINT

1

2

3

     e.   Whether PSC failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the Private Information compromised in the Data Breach;

4

     f.   Whether ODOT failed to select a vendor with adequate data security;

5

     g.   Whether ODOT failed to oversee and monitor PSC;

6

7

8

     h.   Whether PSC's data security practices related to its secure file transfer services prior to and during the Data Breach complied with applicable data security laws and regulations;

9

10

11

     i.   Whether PSC's data security practices related to its secure file transfer services prior to and during the Data Breach were consistent with industry standards;

12

13

     j.   Whether PSC and ODOT owed a duty to Class Members to safeguard their Private Information;

14

15

     k.   Whether PSC and ODOT breached their duties to Class Members to safeguard their Private Information;

16

17

     l.   Whether hackers obtained Class Members' Private Information via the Data Breach;

18

19

     m.  Whether Defendants had a legal duty to provide timely and accurate notice of the Data Breach to Plaintiffs and the Class Members;

20

21

     n.   Whether Defendants breached their duty to provide timely and accurate notice of the Data Breach to Plaintiffs and Class Members;

22

23

24

     o.   Whether PSC and ODOT knew or should have known that PSC's data security systems and monitoring processes as such relate to its secure file transfer services were deficient;

25

26

     p.   What damages Plaintiffs and Class Members suffered as a result of Defendants' misconduct;

Page 31 – CLASS ACTION COMPLAINT

q.  Whether Defendants' conduct was negligent;

r.  Whether Defendants' conduct was *per se* negligent;

s.  Whether Defendants' were unjustly enriched;

t.  Whether Plaintiffs and Class Members are entitled to actual and/or statutory damages;

u.  Whether Plaintiffs and Class Members are entitled to credit or identity monitoring and monetary relief; and

v.  Whether Plaintiffs and Class Members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

133.  Typicality. Plaintiffs' claims are typical of those of other Class Members because Plaintiffs' Private Information, like that of every other Class Member, was compromised in the Data Breach.

134.  Adequacy of Representation. Plaintiffs will fairly and adequately represent and protect the interests of Class Members. Plaintiffs' counsel is competent and experienced in litigating class actions, including data privacy litigation of this kind.

135.  Predominance. PSC and ODOT have engaged in a common course of conduct toward Plaintiffs and Class Members in that all of Plaintiffs' and Class Members' data was stored on the same computer systems and unlawfully accessed and exfiltrated in the same way. The common issues arising from Defendants' conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

136.  Superiority. A class action is superior to other available methods for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a Class

Page 32 – CLASS ACTION COMPLAINT

Olsen Barton LLC
4035 Douglas Way, Suite 200
Lake Oswego, OR 97035
Tel: 503-468-5573 | Fax: 503-820-2933

action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for PSC. In contrast, conducting this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

137.    Class certification is also appropriate. Defendants have acted and/or refused to act on grounds generally applicable to the Class such that final injunctive relief and/or corresponding declaratory relief is appropriate as to the Class as a whole.

138.    Finally, all members of the proposed Class are readily ascertainable. Defendants have access to the names and addresses and/or email addresses of Class Members affected by the Data Breach.

## VI.    CLAIMS FOR RELIEF

### COUNT I
### NEGLIGENCE
*(Alleged Against Both Defendants On behalf of Plaintiffs and the Nationwide Class)*

139.    Plaintiffs restate and reallege all the allegations stated above as if fully set forth herein.

140.    ODOT knowingly collected, came into possession of, and maintained Plaintiffs' and Class Members' Private Information, and had a duty to exercise reasonable care in safeguarding and protecting such Information from being disclosed, compromised, lost, stolen, and misused by unauthorized parties. To fulfill this duty of care, ODOT was required to ensure that any third parties/contractors/vendors it hired also maintained adequate data security, procedures, systems, infrastructure, and protocols. ODOT was also required to oversee and monitor any and all third parties/contractors/vendors it hired who handled Plaintiffs' and the Class's PII.

Page 33 – CLASS ACTION COMPLAINT

141.    PSC, through its relationship with ODOT, came into possession of, and maintained Plaintiffs' and Class Members' Private Information, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such Information from being disclosed, compromised, lost, stolen, and misused by unauthorized parties.

142.    PSC's duty also included a responsibility to implement processes by which it could detect and analyze a vulnerability of its systems quickly and to give prompt notice to those affected in the case of a cyberattack.

143.    PSC and ODOT knew or should have known of the risks inherent in collecting the Private Information of Plaintiffs and Class Members and the importance of adequate security. PSC and ODOT were on notice because, on information and belief, they knew or should have known of the substantial increase in cyberattacks in recent years, including recent similar attacks against secure file transfer companies like Accellion and Fortra carried out by the same Russian cyber gang, Clop.

144.    PSC and ODOT owed a duty of care to Plaintiffs and Class Members whose Private Information was entrusted to it. PSC's and ODOT's duties included, but were not limited to, the following:

    a.   Both Defendants exercising reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting Private Information in its possession;

    b.   PSC's duty to protect customers' Private Information using reasonable and adequate security procedures and systems compliant with industry standards;

    c.   ODOT ensuring any vendors or third parties it hired maintained adequate data security;

    d.   ODOT overseeing and monitoring any vendors or third parties it hired to ensure it maintained adequate data security throughout the course of the relationship;

Page 34 – CLASS ACTION COMPLAINT

1        e.  Defendants' duty to have procedures in place to prevent the loss or

2             unauthorized dissemination of Private Information in its possession;

3        f.   PSC's duty to employ reasonable security measures and otherwise protect

4             the Private Information of Plaintiffs and Class Members pursuant to the

5             FTCA;

6        g.  PSC's duty to implement processes to quickly detect a data breach and to

7             timely act on warnings about data breaches; and

8        h.  PSC's and ODOT's duty to promptly notify Plaintiffs and Class Members of

9             the Data Breach, and to precisely disclose the type(s) of information

10            compromised.

11       145.   Defendants' duty to employ reasonable data security measures arose, in part,

12 under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . .

13 . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the

14 unfair practice of failing to use reasonable measures to protect confidential data.

15       146.   The duties PSC and ODOT had also arose because Defendants were bound by

16 industry standards to protect confidential Private Information.

17       147.   Plaintiffs and Class Members were the foreseeable victims of any inadequate

18 security practices on the part of PSC, and Defendants owed them a duty of care to not subject

19 them to an unreasonable risk of harm.

20       148.   Plaintiffs and Class Members were foreseeable victims of any failure of ODOT to

21 ensure any third party or vendor retained by ODOT maintained adequate data security,

22 procedures, infrastructure, and protocols before entrusting it with Plaintiffs' and the Class's PII.

23 Especially since ODOT had exclusive control over choosing vendor/third parties/contractors to

24 handle Plaintiffs' and the Class's PII.

25 ///

26 ///

Page 35 – CLASS ACTION COMPLAINT

149.    Defendants, through their actions and/or omissions, unlawfully breached their duties to Plaintiffs and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiffs' and Class Members' Private Information within their possession.

150.    PSC, by its actions and/or omissions, breached its duty of care by failing to provide, or acting with reckless disregard for, fair, reasonable, or adequate computer systems and data security practices to safeguard the Private Information of Plaintiffs and Class Members.

151.    PSC and ODOT, by their actions and/or omissions, breached their duties of care by failing to promptly provide direct notice of the Data Breach to the persons whose Private Information was compromised.

152.    PSC, by its actions and/or omissions, breached its duty of care by failing to promptly identify the Data Breach and the vulnerability that caused the Data Breach.

153.    PSC and ODOT breached their duties and were negligent by failing to use reasonable measures to protect Class Members' Private Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

  a. Defendants failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

  b. ODOT failing to ensure all vendor and/or third parties it hired maintained adequate data security procedures, infrastructure, policies, and protocols.

  c. ODOT failing to oversee and monitor the data security procedures, infrastructure, policies, and protocols of the vendors and third-parties it hired.

  d. PSC failing to adequately monitor the security of its networks and systems;

  e. PCS failing to periodically ensure that its email system maintained reasonable data security safeguards;

  f. Defendants allowing unauthorized access to Class Members' Private Information;

  g. Defendants failing to comply with the FTCA;

Page 36 – CLASS ACTION COMPLAINT

Olsen Barton LLC
4035 Douglas Way, Suite 200
Lake Oswego, OR 97035
Tel: 503-468-5573 | Fax: 503-820-2933

h.  Defendants failing to detect in a timely manner that Class Members' Private Information had been compromised; and

i.  Defendants failing to timely notify Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

154.  PSC and ODOT acted with reckless disregard for the rights of Plaintiffs and Class Members by failing to provide prompt and adequate individual notice of the Data Breach such that Plaintiffs and Class Members could take measures to protect themselves from damages caused by the fraudulent use of the Private Information compromised in the Data Breach.

155.  ODOT had a special relationship with Plaintiffs and Class Members. Plaintiffs' and Class Members' willingness to turn over their Private Information to ODOT was predicated on the understanding that ODOT would take adequate security precautions to protect it, which included ensuring any third parties or vendors ODOT hired maintained adequate data security. Moreover, only ODOT had the ability to protect the PII in its possession because Plaintiffs and the Class were given no choice as to if their PII was given to PSC.

156.  Defendants' breach of duties owed to Plaintiffs and Class Members caused Plaintiffs' and Class Members' Private Information to be compromised, exfiltrated, and misused, as alleged herein.

157.  As a result of Defendants' ongoing failure to timely notify Plaintiffs and Class Members of the Data Breach, Plaintiffs and Class Members have been unable to take the necessary precautions to prevent future fraud and mitigate damages.

158.  Defendants' breaches also caused a substantial, imminent risk to Plaintiffs and Class Members, namely, identity theft, loss of control over their Private Information, and/or loss of time and money to monitor their accounts for fraud.

159.  As a result of Defendants' negligence in breach of their duties owed to Plaintiffs and Class Members, Plaintiffs and Class Members are in danger of imminent harm in that their

Page 37 – CLASS ACTION COMPLAINT

1  Private Information, which is still in the possession of third parties, will be used for fraudulent

2  purposes.

3      160.    ODOT and PSC also had independent duties under state laws that required it to

4  reasonably safeguard Plaintiffs' and Class Members' Private Information and promptly notify

5  them about the Data Breach.

6      161.    As a direct and proximate result of Defendants' negligent conduct, Plaintiffs and

7  Class Members have suffered damages as alleged herein and are at imminent risk of further

8  harm.

9      162.    The injury and harm that Plaintiffs and Class Members suffered was reasonably

10 foreseeable.

11      163.    Plaintiffs and Class Members have suffered injury and are entitled to damages in

12 an amount to be proven at trial.

13      164.    In addition to monetary relief, Plaintiffs and Class Members are also entitled to

14 injunctive relief requiring Defendants to, *inter alia*, strengthen their data security systems and

15 monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit

16 monitoring and identity theft insurance to Plaintiffs and Class Members.

17                         <u>**COUNT II**</u>
                **BREACH OF THIRD-PARTY BENEFICIARY CONTRACT**
18      *(Alleged Against Both Defendants On behalf of Plaintiffs and the Nationwide Class)*

19      165.    Plaintiffs restate and reallege the allegations in the preceding paragraphs as if fully

20 set forth herein.

21      166.    Upon information and belief, Defendants entered into a contract(s) to provide

22 secure file transfer services to ODOT and the Class, which services included adequate data

23 security practices, procedures, and protocols sufficient to safeguard the Private Information that

24 was to be entrusted to it (i.e., that of Plaintiffs and the Class).

25      167.    Such contracts were made expressly for the benefit of Plaintiffs and the Class, as it

26 was their Private Information that PSC agreed to receive and protect through its services. Thus,

Page 38 -- CLASS ACTION COMPLAINT

1    the benefit of collection and protection of the Private Information belonging to Plaintiffs and the

2    Class was the direct and primary objective of the contracting parties and Plaintiffs and Class

3    Members were the intended direct and express beneficiaries of such contracts.

4        168.    PSC knew that if it were to breach this contract with ODOT, Plaintiffs and the

5    Class, would be harmed.

6        169.    PSC breached its contract with ODOT and, as a result, Plaintiffs and Class

7    Members were affected by this Data Breach when PSC failed to use reasonable data security

8    measures that could have prevented the Data Breach.

9        170.    As foreseen, Plaintiffs and the Class were harmed by PSC's failure to use

10   reasonable data security measures to securely store and transfer the files containing their Private

11   Information, including but not limited to, the continuous and substantial risk of harm through the

12   loss of their Private Information.

13       171.    Accordingly, Plaintiffs and the Class are entitled to damages in an amount to be

14   determined at trial, along with costs and attorneys' fees incurred in this action.

15                        **COUNT III**
                          **UNJUST ENRICHMENT**
16   *(Alleged Against Both Defendants On behalf of Plaintiffs and the Nationwide Class)*

17       172.    Plaintiffs restate and reallege the allegations in the preceding paragraphs as if fully

18   set forth herein.

19       173.    This Count is pleaded in the alternative to Count II.

20       174.    Plaintiffs and Class Members conferred a benefit on Defendants by surrendering

21   their Private Information to ODOT and then to PSC.

22       175.    PSC and ODOT derived profits from Plaintiffs and the Class's PII because it

23   allowed them to provide services and derive revenue therefrom.

24       176.    As such, a portion of the payments made to PSC, which payments would not be

25   possible without Plaintiffs and Class Members turning over their Private Information, was to be

26   used to provide a reasonable and adequate level of data security that was in compliance with

Page 39 – CLASS ACTION COMPLAINT

applicable state and federal regulations and industry standards. However, PSC did not do this. Rather, PSC retained the benefits of its unlawful conduct, including the amounts of payment received that should have been used for adequate cybersecurity practices that it failed to provide.

177.    Likewise, a portion of the payments made to ODOT, which payments would not be possible without Plaintiffs and Class Members turning over their Private Information, was to be used to provide a vendor and/or contractor with adequate data security. However, ODOT did not do this. Instead, ODOT retained the benefits of its unlawful conduct, including the amounts of payment received that should have been used for a vendor/contractor/third-party with adequate data security, which it failed to provide.

178.    Defendants knew that Plaintiffs and Class Members conferred a benefit upon them, which Defendants accepted. Defendants profited from these transactions and used the Private Information of Plaintiffs and Class Members for business purposes, while failing to use the payments it received for adequate data security measures or retaining a vendor/contractor/third party with adequate data security, which would have secured Plaintiffs' and Class Members' Private Information and prevented the Data Breach.

179.    If Plaintiffs and Class Members had known that PSC had not adequately secured their Private Information, they would not have agreed to provide such Private Information.

180.    If Plaintiffs and Class Members had known ODOT would hand over the PII to a third party with inadequate data security, they would not have agreed to provide such Private Information.

181.    Due to Defendants' conduct alleged herein, it would be unjust and inequitable under the circumstances for Defendants to be permitted to retain the benefits of their wrongful conduct.

182.    As a direct and proximate result of Defendants' conduct, Plaintiffs and Class Members have suffered and/or are at a substantial and continuous risk of suffering injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity to control

Page 40 – CLASS ACTION COMPLAINT

1   how their Private Information is used; (iii) the compromise, publication, and/or theft of their

2   Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and

3   recovery from identity theft, and/or unauthorized use of their Private Information; (v) lost

4   opportunity costs associated with effort expended and the loss of productivity addressing and

5   attempting to mitigate the actual and future consequences of the Data Breach, including but not

6   limited to efforts spent researching how to prevent, detect, contest, and recover from identity

7   theft; (vi) the continued risk to their Private Information, which remains in Defendants'

8   possession and is subject to further unauthorized disclosures so long as Defendants fail to

9   undertake appropriate and adequate measures to protect the Private Information in their continued

10  possession; and (vii) future costs in terms of time, effort, and money that will be expended to

11  prevent, detect, contest, and repair the impact of the Private Information compromised as a result

12  of the Data Breach for the remainder of the lives of Plaintiffs and Class Members.

13      183.    Plaintiffs and Class Members are entitled to full refunds, restitution, and/or

14  damages from Defendants and/or an order proportionally disgorging all profits, benefits, and

15  other compensation obtained by Defendants from their wrongful conduct. This can be

16  accomplished by establishing a constructive trust from which the Plaintiffs and Class Members

17  may seek restitution or compensation.

18      184.    Plaintiffs and Class Members may not have an adequate remedy at law against

19  Defendants, and accordingly, they plead this claim for unjust enrichment in addition to, or in the

20  alternative to, other claims pleaded herein.

21                          **COUNT IV**
                **Violation of Oregon's Unlawful Trade Practices Act ("UTPA")**
22                          **ORS § 646.608** *et seq.*
                **(Alleged Against PSC On Behalf of Plaintiffs and the Oregon Subclass)**
23

24      185.    Plaintiffs and the Oregon Subclass (the "Class" for the purposes of this Count),

25  re-allege and incorporate the above paragraphs as if fully set forth herein.

26

---

Page 41 – CLASS ACTION COMPLAINT

186.    The Data Breach constituted a "breach of security" of PSC, within the meaning of O.R.S. § 646.602(1)(a).

187.    The information lost in the Data Breach constituted "personal information" within the meaning of ORS § 646.602(11).

188.    PSC failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach.

189.    PSC unreasonably delayed informing anyone about the breach of security of Class Members' confidential and personal information after PSC knew the Data Breach had occurred.

190.    PSC failed to disclose to Class Members, without unreasonable delay, and in the most expedient time possible, the breach of security of their unencrypted, or not properly and securely encrypted, Personal Information when they knew or reasonably believed such information had been compromised.

191.    Upon information and belief, no law enforcement agency instructed PSC that notification to Class Members would impede any investigation.

192.    PSC's failure to implement reasonable security measures, promptly notify Class Members, and otherwise comply with ORS § 646A.600 is an unlawful practice under ORS § 646.607(1)(u) in that PSC engaged in unfair and deceptive conduct.

193.    PSC knew or should have known that its data security practices were inadequate to protect against the known and foreseeable risk of a data breach. Plaintiffs and Class Members relied on PSC to promptly and accurately disclose the true state of its data security practices, PSC omitted such information from disclosure to Plaintiffs and Class Members. Plaintiffs and Class Members would not have purchased the goods or services from Defendants, would have paid less, or would have taken other precautions, had they known about PSC's deficient data security.

Page 42 – CLASS ACTION COMPLAINT

194.    As a result of PSC's failures and omissions Plaintiffs and Class Members suffered damages, including in the form of loss of the benefit-of-the bargain, time and/or money spent mitigating harms, diminished value of PII, and/or attempted identity theft or misuse of PII.

195.    PSC's failure to safeguard Plaintiffs' and Class Members' PII constitutes an unfair act because these acts or practices offend public policy as it has been established by statutes, regulations, the common law or otherwise, including, but not limited to, the public policy established by ORS § 646A.600.

196.    PSC's failure to safeguard Plaintiffs' and Class Members' PII is unfair because this act or practice (1) causes substantial injury to Plaintiffs and Class Members; (2) is not outweighed by any countervailing benefits to consumers or competitors; and (3) is not reasonably avoidable by consumers.

197.    PSC's failure to safeguard Plaintiffs' and Class Members' PII is unfair because this act or practice is immoral, unethical, oppressive and/or unscrupulous.

198.    PSC's failure to promptly notify Plaintiffs and Class Members of the loss of their PII is unfair because these acts or practices offend public policy as it has been established by statutes, regulations, the common law or otherwise, including, but not limited to, the public policy established by ORS § 646A.600.

199.    PSC's failure to promptly notify Plaintiffs and Class Members of the loss of their PII is unfair because this act or practice (1) causes substantial injury to Plaintiffs and Class Members; (2) is not outweighed by any countervailing benefits to consumers or competitors; and (3) is not reasonably avoidable by consumers.

200.    PSC's failure to promptly notify Plaintiffs and Class Members of the loss of their data is unfair because this act or practice is immoral, unethical, oppressive and/or unscrupulous.

201.    As a result of PSC's violation of ORS § 646.605 *et seq.*, Plaintiffs and other Class Members suffered ascertainable loss of money or property, including expenses associated with necessary credit monitoring.

Page 43 – CLASS ACTION COMPLAINT

1    202.    Plaintiff, individually and on behalf of the Class, seeks all remedies available

2    under ORS § 646.605, including equitable relief, actual damages, statutory damages pursuant to

3    ORS § 646.638(1), and punitive damages.

4    203.    Plaintiff, individually and on behalf of the Class, also seeks reasonable attorneys'

5    fees and costs under ORS § 646.638(3).

6                                      **COUNT VI**

**Violations of the Drivers Privacy Protection Act (DPPA), 18 U.S.C. § 2721, et seq.**

7    *(Alleged Against PSC On Behalf of Plaintiffs and the Nationwide Class)*

8    204.    Plaintiffs restate and reallege the allegations in the preceding paragraphs as if fully

9    set forth herein.

10    205.    DPPA, 18 U.S.C. § 2722(a) provides that "it shall be unlawful for any person

11    knowingly to obtain or disclose personal information, from a motor vehicle record, for any use

12    not permitted under section 2721(b) of [the DPPA]."

13    206.    The DPPA defines "person" to mean "an individual, organization or entity." 18

14    U.S.C. § 2725(2). PSC is a "person" under the DPPA.

15    207.    The DPPA defines "motor vehicle record" to mean "any record that pertains to a

16    motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification

17    card issued by a department of motor vehicles." 18 U.S.C. § 2725(1). The records that PSC

18    obtains and stores from ODOT, containing Plaintiffs' and Class members' personal information

19    — including driver's license numbers, names, and addresses — constitute "motor vehicle

20    records" under the DPPA.

21    208.    The DPPA defines "personal information" to mean "information that identifies an

22    individual, including an individual's photograph, social security number, driver identification

23    number, name, address (but not the 5-digit zip code), telephone number, and medical or

24    disability information, but does not include information on vehicular accidents, driving

25    violations, and driver's status." 18 U.S.C. § 2725(3). Plaintiffs' and Class members' personal

26

Page 44 – CLASS ACTION COMPLAINT

1    information, which includes driver's license numbers, names, and addresses falls within this

2    definition.

3        209.    PSC knew Plaintiffs' and other Class members' personal information was

4    obtained from ODOT, as the files were provided so that ODOT could utilize PSC's services.

5        210.    In violation of the DPPA, PSC knowingly disclosed the personal information of

6    Plaintiffs and Class members by storing that information on unsecured external servers that was

7    accessed by Clop.

8        211.    Section 2721 (b) of the DPPA provides for certain permissible uses of personal

9    information. PSC's knowing disclosure of Plaintiffs' and Class members' personal information to

10   unauthorized third parties is not one of the permissible uses under Section § 2721(b). Therefore,

11   PSC is in violation of 18 U.S.C. § 2722(a) of the DPPA.

12       212.    Pursuant to 18 U.S.C. § 2724(b)(1)-(4), as a result of PSC's violation of the

13   DPPA, Plaintiffs and Class members are entitled to (1) actual damages, but not less than

14   liquidated damages in the amount of $2,500, (2) punitive damages, (3) attorneys' fees and costs,

15   and (4) such other preliminary and equitable relief as the Court determines to be appropriate.

16                    **VII.    PRAYER FOR RELIEF**

17       WHEREFORE, Plaintiffs, on behalf of themselves and the Class described above, seek

18   the following relief:

19           a.   An order certifying this action as a Class action ORCP 32, defining the Class

20                as requested herein, appointing the undersigned as Class counsel, and finding

21                that Plaintiffs are proper representatives of the Nationwide Class requested

22                herein;

23           b.   Judgment in favor of Plaintiffs and Class Members awarding them

24                appropriate monetary relief, including actual damages, statutory damages,

25                equitable relief, restitution, disgorgement, and statutory costs;

26   ///

Page 45 – CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

c.   An order providing injunctive and other equitable relief as necessary to protect the interests of the Class as requested herein;

d.   An order instructing Defendants to purchase or provide funds for lifetime credit monitoring and identity theft insurance to Plaintiffs and Class Members;

e.   An order requiring Defendants to pay the costs involved in notifying Class Members about the judgment and administering the claims process;

f.   A judgment in favor of Plaintiffs and Class Members awarding them prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and expenses as allowable by law; and

g.   An award of such other and further relief as this Court may deem just and proper.

///
///
///
///
///
///
///
///
///
///
///
///
///
///

Page 46 – CLASS ACTION COMPLAINT

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR  97035
Tel: 503-468-5573 | Fax: 503-820-2933

1

## VIII.    DEMAND FOR JURY TRIAL

2    Plaintiffs demand a trial by jury on all triable issues.

3    DATED August  25, 2023.

4                                        /s/ Paul B. Barton
5                                        Paul B. Barton, OSB No. 100502
                                         Trial Attorney
6                                        Alex Graven, OSB No. 153443
                                         **OLSEN BARTON LLC**
7                                        4035 Douglas Way, Suite 200
                                         Lake Oswego, OR 97035
8                                        Telephone: 503-468-5573
                                         paul@olsenbarton.com
9                                        alex@olsenbarton.com

10
                                         William B. Federman (*pro hac vice* to be filed)
11                                       **FEDERMAN & SHERWOOD**
                                         10205 N. Pennsylvania Ave.
12                                       Oklahoma City, OK  73120
                                         Telephone: (405) 235-1560
13                                       Facsimile: (405) 239-2112
                                         wbf@federmanlaw.com
14

15                                       Jennifer S. Czeisler (*pro hac vice* to be filed)
16                                       **STERLINGTON PLLC**
                                         One World Trade Center
17                                       85th Floor
                                         New York, New York 10007
18                                       Tel: (212) 433-2993
                                         Email: jen.czeisler@sterlingtonlaw.com
19

20                                       *Attorneys for Plaintiffs*

21                                       *Pro hac vice application forthcoming*

22

23

24

25

26

Page 47 – CLASS ACTION COMPLAINT

1

2

3

4            IN THE CIRCUIT COURT OF THE STATE OF OREGON

5                    FOR THE COUNTY OF MARION

6   CAERY EVANGELIST, Ph.D. and          Case No.: 23CV34800
    BRIAN J. ELS, Ph.D., on behalf of
7   themselves and all others similarly   **PLAINTIFFS' FIRST SET OF**
    situated,                             **REQUESTS FOR PRODUCTION OF**
8                                         **DOCUMENTS TO DEFENDANT**

9                    Plaintiffs,

10                      v.

11  STATE OF OREGON, by and through its
    Department of Transportation; AND
12  PROGRESS SOFTWARE
    CORPORATION,
13

14                   Defendants.

15  **TO:   The State of Oregon, by and Through its Department of Transportation, Ellen F.**
    **Rosenblum, Attorney General, Office of the Attorney General, Department of**
16  **Justice, 1162 Court Street NE, Salem, Oregon 97301; and**

17  **Progress Software Corporation, c/o Corporation Service Company, 1127**
    **Broadway Street NE, Suite 310, Salem, Oregon 97301**
18

19          Pursuant to Oregon Rule of Civil Procedure ("ORCP") 43, Plaintiffs Caery

20  Evangelist, Ph.D. and Brian J. Els, Ph.D. (collectively, "Plaintiffs"), hereby request that

21  Defendants the State of Oregon, by and through its Department of Transportation ("ODOT"),

22  and Progress Software Corporation ("PSC") (collectively, "Defendants"), produce for

23  inspection and copying to the undersigned counsel, the following documents that are in their

24  actual or constructive possession, custody or control, **45 days after service of the summons.**

25  *See* ORCP 43(B)(2). Production should be made in accordance with the definitions and

26  instructions set forth below.

---

Page 1 —  PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF
           DOCUMENTS TO DEFENDANTS

1

## **DEFINITIONS**

2      Each word or term used in these Requests is intended to have the broadest meaning

3  permitted under the Oregon Rules of Civil Procedure and the Local Rules of this Court.

4  Furthermore, these Requests shall be interpreted by reference to the definitions set forth below:

5      1.      As used herein, the terms **"and"** and **"or"** shall be construed either

6  conjunctively or disjunctively in an inclusive manner to bring within the scope of these

7  Requests any information which might otherwise be construed to be outside their scope.

8  **"Including"** shall be understood to mean including but not limited to. Singular nouns and

9  pronouns shall be deemed to include the plural, and vice versa, and masculine, feminine, and

10  neutral nouns and pronouns shall be deemed to include one another, wherever appropriate.

11      2.      **"Action"** or **"Litigation"** means the actions pending before this Court in the

12  case captioned *Evangelist, et al. v. State of Oregon*, Case No.

13      3.      The terms **"any,"** **"all,"** and **"each"** shall each mean and include the other.

14      4.      **"Class"** or **"Class Member"** shall mean all individuals in the United States and

15  its Territories whose Personally Identifiable Information (as defined below) may have been

16  compromised by the Data Breach (as defined below).

17      5.      **"Communication"** or **"Communications"** shall mean the transmittal (in the

18  form of facts, ideas, thoughts, opinions, data, inquiries or otherwise) and includes, without

19  limitation, correspondence, memoranda, reports, presentations, face-to-face conversations,

20  telephone conversations, text messages, instant messages, intranet messages, voice messages,

21  negotiations, agreements, inquiries, understandings, meetings, letters, notes, telegrams, mail,

22  email, and postings of any type.

23      6.      **"Complaint"** means the operative Class Action Complaint filed on August 25,

24  2023, in the action captioned *Evangelist, et al. v. State of Oregon,* Case No. No. 23CV34800.

25  ///

26  ///

Page 2 –  PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF
           DOCUMENTS TO DEFENDANTS

7.    **"Computer Network"** means the data network that connects the computer, virtual, and all other digital components of Oregon Department of Transportation's software systems.

8.    **"Computer Systems"** includes any Oregon Department of Transportation's server (whether physical, web-based, or virtual), desktop computer, laptop computer, tablet, mobile phone, networking equipment, backup storage, internet site, intranet site, and the software, programs, applications including Oregon Department of Transportation's platforms, scripts, operating systems, or databases used to control, access, add, delete, or modify any data or information stored on any of the foregoing non-exclusive list.

9.    **"Cyber Security Incident"** means any malicious act or suspicious event that threatened, or was an attempt to threaten, the security, confidentiality, integrity, or availability of information in or on Oregon Department of Transportation's Computer System or Computer Network.

10.    The terms **"concerning"** and **"regarding"** shall mean constituting, evidencing, reflecting, incorporating, effecting, including, or otherwise pertaining or relating, either directly or indirectly, or being in any way logically or factually connected with the subject matter of the inquiry or Request. Requests for **"documents concerning"** means any documents which explicitly or implicitly, in whole or in part, compare, were received in conjunction with, or were generated as a result of the subject matter of the Request, including all documents which reflect, refer, record, are in regard to, in connection with, specify, memorialize, relate, describe, discuss, consider, constitute, embody, evaluate, analyze, refer to, review, report on, comment on, impinge upon, or impact the subject matter of the Request.

11.    **"Database"** shall mean a set of data stored in a computer.

12.    **"Data Breach"** means the cybersecurity incident concerning ODOT's Computer System(s)/Computer Network(s)/servers through the third-party software vendor,

---

Page 3  –  PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF
DOCUMENTS TO DEFENDANTS

Olsen Barton LLC
4035 Douglas Way, Suite 200
Lake Oswego, OR  97035
Tel: 503-468-5573 | Fax: 503-820-2933

1  MOVEit, that ODOT learned of on June 1, 2023, in which an unauthorized party was able to

2  access the Personally Identifiable Information belonging to Plaintiffs' and the Class.

3       13.    **"Data Security"** means protection against unauthorized access, transfer,

4  modification, misuse, or destruction of data held by, or on behalf of Defendants. It also means

5  Defendants' policies, practices, methods, and procedures concerning the intended protection

6  against unauthorized access, transfer, modification, misuse, or destruction of data.

7       14.    **"Data Security Incident"** means any unauthorized access or attempted

8  unauthorized access to your computer systems or networks or any other security breach

9  involving Personally Identifiable Information stored by you regardless of whether any

10  suspected loss or misuse of stolen data occurred.

11       15.    **"Defendants"** shall mean ODOT and PSC and their officers, directors, trustees,

12  agents, employees, staff members, and paid consultants; any predecessor, successor, parent,

13  subsidiary, division, franchise, or affiliate; and any person acting on behalf of any of the

14  aforementioned.

15       16.    **"Document"** or **"documents"** shall have the full meaning ascribed to those

16  terms under the Oregon Rules of Civil Procedure and include, without limitation, any and all

17  drafts; communications; correspondence; emails; text messages; intranet messages;

18  memoranda; records; reports; books; reports, and/or summaries of personal conversations or

19  interviews; diaries; graphs; charts; diagrams; tables; photographs; recordings; tapes;

20  microfilms; minutes; records, reports, and/or meetings or conferences records and reports of

21  consultants; press releases; stenographic handwritten or any other notes; work papers; checks,

22  front and back; check vouchers, check stubs or receipts; tape data sheets or data processing

23  cards or discs or any other written, recorded, transcribed, punched, taped, filmed or graphic

24  matter, however produced or reproduced; and any paper or writing of whatever description,

25  including any computer database or information contained in any computer although not yet

26

---

Page 4 –  PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF
DOCUMENTS TO DEFENDANTS

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR 97035
Tel: 503-468-5573 | Fax: 503-820-2933

printed out. The term "document" or "documents" further includes all copies where the copy is not identical to the original.

17.    **"ESI," "Electronically Stored Information,"** or **"Electronic Data"** means the original (or identical copies when originals are not available) and any non-identical copies (whether different from the originals because of notes made on such copies or otherwise) of Electronic Data of any kind or description, whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means. Such data may include, but is not limited to, all text files (including word processing documents), presentation files (such as PowerPoint), spreadsheets, electronic mail files and information concerning electronic mails (including electronic mail receipts and/or transmittals, logs of electronic mail history and usage, header information, and deleted files), internet history of files and preferences, graphical files in any format, databases, calendar and scheduling information, task lists, telephone logs, contact managers, computer system activity logs, computer programs (whether private, commercial, or work-in-progress), programming notes or instructions, output resulting from the use of any software program including, but not limited to, database files, charts, graphs, outlines, operating systems, source codes of all types, programming languages, linkers and compilers, peripheral drivers, .PDF and .TIFF files, batch files, native files and all ASCII files, and any and all miscellaneous files and/or file fragments, regardless of the medium or media on which they reside and regardless of whether such electronic data is in an active file, deleted file, or file fragment. ESI Data includes, but is not limited to, any and all items stored on any electronic media, computers, networks or "cloud" computing services and all backup files containing electronically stored data. The term "ESI" also includes the file, folder tabs, metadata, personal electronic backup media, including thumb drives, and/or containers and labels appended to or associated with any physical storage device associated with each such original and/or copy. In addition, the term "ESI" includes all text messages, instant messages, internet messages, intranet messages, electronic bulletin board messages, blog entries, website postings of any

Page 5  –  PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS

nature, and all other methods by which messages may be transmitted by or through electronic means.

18.    **"Including"** means "including but not limited to" and "including without limitation.

19.    **"Identify"** shall mean:

a.    With respect to a natural person, to state the person's full name (or as much of their name as is possible), and last known mailing address, work address, and phone number,

b.    With respect to a corporation or other business entity, to specify the name of the corporation or business entity, the type of entity (e.g., corporation, partnership, etc.), its present address and telephone number, and any persons you are aware of who acted on behalf of that corporation or business entity with respect to the events at issue,

c.    With respect to a document, to state the Bates stamp number (if produced in this litigation) or the author(s), recipient(s), date, title or description, subject matter, and present custodian. In lieu of such identification, a copy of the document may be produced,

d.    With respect to a tangible thing, to state the commonly used name of the thing or describe the thing in detail if it does not have a commonly used name, and to state all other means of identification of the item, such as an SKU number, model number, product number, etc., and

e.    With respect to a communication, to state the name and title of all persons present at the time of the communication, the date, time, and location of the communication, the method of communication used, and to identify all documents recording or summarizing the communication.

---

Page 6 –   PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF
DOCUMENTS TO DEFENDANTS

Olsen Barton LLC
4035 Douglas Way, Suite 200
Lake Oswego, OR 97035
Tel: 503-468-5573 | Fax: 503-820-2933

20.    **"MOVEit"** shall mean the managed file transfer software created, manufactured, produced, maintained, and/or otherwise controlled by PSC.

21.    The **"State of Oregon, by and through its Department of Transportation"** or **"ODOT,"** shall mean its officers, directors, trustees, agents, employees, staff members, and paid consultants; any predecessor, successor, parent, subsidiary, division, franchise, or affiliate; and any person acting on behalf of any of the aforementioned.

22.    The term **"Person"** includes the plural as well as the singular and includes a person, firm, association, partnership, corporation, franchise, and any other form of legal entity.

23.    **"Personally Identifiable Information,"** or **"PII,"** shall mean all information that can be used to identify an individual and includes, but is not limited to, names, mailing addresses, license or identification numbers, and the last four digits of Social Security numbers.

24.    **"Plaintiffs"** shall mean Caery Evangelist, Ph.D. and Brian J. Els, Ph.D.

25.    **"Progress Software Corporation"** or **"PSC,"** shall mean its officers, directors, trustees, agents, employees, staff members, and paid consultants; any predecessor, successor, parent, subsidiary, division, franchise, or affiliate; and any person acting on behalf of any of the aforementioned.

26.    The terms **"relating to," "relate to," "referring to," "refer to," "reflecting," "reflect," "regard(s)," "regarding," "concerning,"** and/or **"concerns"** shall mean evidencing, regarding, concerning, discussing, embodying, describing, summarizing, containing, constituting, showing, mentioning, reflecting, pertaining to, dealing with, relating to, referring to in any way or manner, or in any way logically or factually, connecting with the matter described in that paragraph of these demands, including documents attached to or used in the preparation of or concerning the preparation of the documents.

27.    **"You"** and **"Your,"** means Defendants and their officers, directors, employees, agents, or anyone acting or purporting to act on their behalf.

---

Page 7 –  PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF
          DOCUMENTS TO DEFENDANTS

**FURTHER RULES OF CONTRUCTION**

1.     The connectives "and" and "or" shall be constructed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

2.     The use of any tense of any verb shall also include within its meaning all other tenses of that verb.

3.     The singular form of a noun or pronoun includes the plural form and vice versa.

4.     The terms "all", "any", and "each" shall each be construed as encompassing any and all.

**INSTRUCTIONS**

1.     Pursuant to ORCP(B)(2)(a–d) your response must include the following:

    a.     A statement that, except as specifically objected to, any requested item within the party's possession or custody is provided, or will be provided or made available within the time allowed and at the place and in the manner specified in the request, and that the items are or must be organized and labeled to correspond with the categories in the request;

    b.     A statement that, except as specifically objected to, a reasonable effort has been made to obtain any requested item not in the party's possession or custody, or that no such item is within the party's control;

    c.     A statement that, except as specifically objected to, entry will be permitted as requested to any land or other property; and

    d.     any objection to a request or a part thereof and the reason for each objection.

2.     In addition to the requirements set forth in the Oregon Rules of Civil Procedure, which Plaintiff incorporates herein, the following instructions apply to each of the

Page 8 –   PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS

1  document requests set forth below and are deemed to be incorporated in each of said

2  requests.

3          3.      If a document prepared before or after this period is necessary for a correct or

4  complete understanding of any document covered by a request, you must produce the earlier or

5  subsequent document as well. If any document is undated and the date of its preparation cannot be

6  determined, the document shall be produced if otherwise responsive to the production request.

7  Responsive data maintained electronically should be produced in one of the following electronic

8  formats: Excel, Comma Separated Values, or Text File (either tab delimited or pike delimited). For

9  each data field of transaction data produced, a complete description of the contents of that data field

10  and the units of measurement used should be supplied. Each data field should be reported using a

11  common unit of measure. If the data field contains coded values, then provide a table or code sheet

12  sufficient to understand or interpret those values. If transaction data is produced with different data

13  fields arranged in separate database tables or files, then ensure that the data fields exist in each table

14  or file so that the tables or files can be linked together. Also provide a description of which data

15  fields in each database table or file can be used to perform that link.

16          4.      These document requests shall be deemed to be continuing in nature so that if

17  you or any person acting on your behalf subsequently discovers or obtains possession,

18  custody, or control of any document previously requested or required to be produced, you

19  shall promptly make such document available. Each supplemental response shall be served

20  on Plaintiff no later than 30 days after the discovery of the additional information.

21          5.      These requests include data and information stored electronically or

22  magnetically. To the extent responsive documents or data are maintained in an electronic

23  format, including, but not limited to, on a disk, tape, hard drive, flash drive, steady state

24  drive, or other magnetic or machine-readable format, please produce the electronic version

25  along with manuals and all other documents sufficient to operate, display, read, and interpret

26  the programs, documents, or data.

---

Page 9 – PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF
        DOCUMENTS TO DEFENDANTS

Olsen Barton LLC
4035 Douglas Way, Suite 200
Lake Oswego, OR 97035
Tel: 503-468-5573 | Fax: 503-820-2933

6.      You should construe these requests as follows: (a) the singular includes the plural and the plural includes the singular; (b) the masculine, feminine, or neuter pronoun includes the other genders; (c) the conjunctions "and" and "or" should be read either disjunctively or conjunctively to bring within the scope of the request all information that might otherwise be construed to be outside its scope; (d) the words "any" and "all" shall include each and every; and (e) the present tense of a verb includes its past tense and vice versa.

7.      These document requests require that all documents created, generated, or dated during the Relevant Time Period, as well as documents created, generated, or dated outside this period, but which contain information concerning this period or were referred to by documents responsive to these document requests, be produced by you.

8.      In producing documents and ESI, you are to furnish all documents or ESI in your possession, custody, or control, regardless of the physical location of the documents or whether such documents or materials are possessed directly by you, your assistants, office administrative personnel, direct reports, or employees, or by your attorneys or their agents, employees, representatives, or investigators.

9.      In producing documents and ESI, you are requested to produce the original of each document or item of ESI requested, together with all non-identical copies and drafts of such document.  If the original of any document or item of ESI cannot be located, a copy shall be produced in lieu thereof, and shall be legible and, for a document, bound or stapled in the same manner as the original.

10.     All documents or things that respond, in whole or in part, to any portion of these requests are to be produced in their entirety, including all attachments and enclosures. documents attached to each other, and e-mail messages and their attachments, should not be separated.

///

---

Page 10 --   PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF
             DOCUMENTS TO DEFENDANTS

11.     Documents or ESI not otherwise responsive to these requests shall be produced if such documents or ESI mention, discuss, refer to, or explain the documents that are called for by these requests, or if such documents are attached to documents called for by these requests and constitute routing slips, transmittal memoranda, letters, cover sheets, comments, evaluations, or similar materials.

12.     All documents and ESI shall be produced in the same order as they are or were kept or maintained by you in the ordinary course of your business.  If any documents or items of ESI have been removed from the files in which they were found for purposes of producing them in response to these requests, indicate for each document the file(s) from which the document(s) was (were) originally located.

13.     All documents shall be produced in the file folder, envelope, or other container in which the documents are kept or maintained by you.  If for any reason the container cannot be produced, produce copies of all labels or other identifying marks.

14.     Documents and ESI shall be produced in such fashion as to identify the department, branch, or office in whose possession they were located and, where applicable, the natural person in whose possession they were found and the business address of each document custodian(s).

15.     Documents attached to each other should not be separated, including, but not limited to, e-mail attachments.

16.     If a document or item of ESI once existed and has subsequently been lost, destroyed, or is otherwise missing, please provide sufficient information to identify the document and state the details concerning its loss.

17.     All documents produced in paper form should be numbered sequentially, with a unique number on each page, and with a prefix identifying the party producing the document.

18.     Documents shall be produced in such fashion as to identify the department, branch, or office in whose possession they were located and, where applicable, the natural

Page 11 –   PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF
             DOCUMENTS TO DEFENDANTS

1  person in whose possession they were found and the business address of each document's

2  custodian.

3      19.    If you object to any part of these document requests, please: (a) state each

4  objection you assert in sufficient detail to permit the Court to determine the validity of the

5  objection; and (b) produce all responsive documents to which your objection does not apply.

6      20.    If you claim that any part of these document requests is vague or ambiguous,

7  please identify the specific language you consider vague or ambiguous and state the

8  interpretation of the language in question you used to frame your response.

9      21.    If you claim the attorney-client privilege or any other privilege or work product

10  protection for any document, provide a detailed privilege log that contains at least the following

11  information for each document or portion of document withheld or redacted on such grounds:

12  (a) the date of the document or item of ESI; (b) the identity of each and every author of the

13  document or item of ESI; (c) the identity of each and every person who prepared or participated

14  in the preparation of the document or item of ESI; (d) the identity of each and every person

15  who received the document or item of ESI; (e) the identity of each and every person from

16  whom the document or item of ESI was received; (f) a general description of the subject matter;

17  (g) the present location of the document or item of ESI and all copies thereof; (h) the identity

18  of each and every person having custody or control of the document or item of ESI and all

19  copies thereof; (i) the identity of the numbered request(s) to which the document or item of

20  ESI is responsive; and (j) sufficient information concerning the document or item of ESI and

21  the circumstances thereof to explain the claim of privilege or protection and to permit the

22  adjudication of the propriety of the claim.

23      22.    If you assert privilege with respect to part of a responsive document or item of

24  ESI, redact the privileged portion and indicate clearly on the document where the material was

25  redacted.  Produce the redacted document or item of ESI even if you believe that the

26  nonredacted portion is not responsive.  Identify the redacted portions on the privilege log in

Page 12  −  PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF
          DOCUMENTS TO DEFENDANTS

the same manner as withheld documents. Non-responsiveness of a portion of a document or item of ESI is not a sufficient basis for redaction.

23. These requests seek all responsive documents and materials during the Relevant Time Period that are applicable to or concerning the matters and subjects referenced therein, regardless of whether the particular responsive document or item of ESI was created or generated during the Relevant Time Period.

## **RELEVANT TIME PERIOD**

The Relevant Time Period for each Request is from **May 1, 2023, to the present** unless otherwise specifically indicated, and shall include all documents and information concerning such period, even though prepared or published outside of the Relevant Time Period. If a document prepared before the Relevant Time Period is necessary for a correct or complete understanding of any document covered by a Request, you must produce the earlier or subsequent document as well. If a document is undated, the date of its preparation cannot be ascertained, and the document is otherwise in response to the Request, the document shall be produced.

## **SEARCH METHODOLOGY**

Upon reasonable request, a party shall also disclose information relating to network design, the types of databases, database dictionaries, the access control list and security access logs and rights of individuals to access the system and specific files and applications, the ESI document retention policy, organizational chart for information systems personnel, or the backup systems recovery routines, including, but not limited to, tape rotation and destruction/overwrite policy.

## **DOCUMENT PRODUCTION REQUESTS**

**REQUEST FOR PRODUCTION NO. 1:** All documents concerning your investigations, whether conducted by you or any third party engaged or directed by you,

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR  97035
Tel: 503-468-5573 | Fax: 503-820-2933

1  regarding the Data Breach including the documents collected or prepared as a result of those

2  investigations and all reports of findings from such investigations.

3      **RESPONSE**:

4

5      **REQUEST FOR PRODUCTION NO. 2:**  All documents regarding the source,

6  cause, mode, or mechanism of the Data Breach.

7      **RESPONSE**:

8

9      **REQUEST FOR PRODUCTION NO. 3:**  All documents, including text messages,

10  intranet communication, and emails, concerning the means by which the Data Breach and

11  was discovered and your response to the Data Breach, including any consideration of, or

12  recommendations for, improvements or modifications to data security as a result of the Data

13  Breach, and the need to retain a forensic expert or vendor to assist in the response to the Data

14  Breach.

15      **RESPONSE**:

16

17      **REQUEST FOR PRODUCTION NO. 4:**  All documents sufficient to determine the

18  scope of the Data Breach and the members of the purported class, including the data maintained

19  within your data systems/servers that was or could have been impacted by the Data Breach

20  (including the number of individuals whose PII was potentially impacted, the location of those

21  individuals, what information was potentially compromised, whether the potentially

22  compromised information differed between affected individuals, and whether the potentially

23  compromised information was encrypted or redacted).

24      **RESPONSE:**

25

26

Page 14 –   PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF
                 DOCUMENTS TO DEFENDANTS

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR  97035
Tel: 503-468-5573 | Fax: 503-820-2933

1   **REQUEST FOR PRODUCTION NO. 5:**  All documents showing your policies,

2   practices, and procedures, for preventing, investigating, and responding to data security

3   incidents during the Relevant Time Period.

4   **RESPONSE:**

5

6   **REQUEST FOR PRODUCTION NO. 6:**  All documents (including internal

7   policies and procedures) concerning any security concerns, complaints, reports,

8   vulnerabilities, or flaws with respect to data security and/or MOVEit, and your response to or

9   disposition of those concerns, complaints, reports, or flaws during the Relevant Time Period.

10  **RESPONSE:**

11

12  **REQUEST FOR PRODUCTION NO. 7:**  All documents sufficient to identify the

13  way you or any third-party process, store, transfer, access, or utilize the PII you

14  maintain/store including documents concerning how your computer systems, servers,

15  databases, online portals, and/or the MOVEit software are protected against possible

16  breaches by unauthorized persons.

17  **RESPONSE:**

18

19  **REQUEST FOR PRODUCTION NO. 8:**  All documents concerning any firewalls,

20  detection processes (including detection of intrusions and malware), logs, endpoint

21  protection, data loss prevention, or prevention devices or software, including file integrity

22  monitoring systems and policies, vulnerability management systems and policies, and audit

23  log management used by you (or any person acting on your behalf) to protect or otherwise

24  segregate from the general internet any computer systems/servers/software used to process or

25  store the PII you collect and maintain, including the PII Plaintiff and the Class.

26

---

Page 15 –   PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF
            DOCUMENTS TO DEFENDANTS

1     **RESPONSE**:

2

3     **REQUEST FOR PRODUCTION NO. 9:**  All documents written by, or at the

4 direction of, or received by, you relating to any test, inspection evaluation, analysis, or report

5 concerning the safety, security, or vulnerability of, or intrusion in, any computer system,

6 server, database, online portal, or the MOVEit software that stores, accesses, processes, or

7 transmits PII during the Relevant Time Period.

8     **RESPONSE**:

9

10     **REQUEST FOR PRODUCTION NO. 10:**  All documents concerning forensic

11 images of any servers, networks, databases, online portals, email accounts, or other computer

12 systems, accessed or implicated in the Data Breach, including all transactional logs, access

13 logs, and security and authentication logs, and forensic reports.

14     **RESPONSE**:

15

16     **REQUEST FOR PRODUCTION NO. 11:**  All documents sufficient to identify the

17 duration of the Data Breach.

18     **RESPONSE**:

19

20     **REQUEST FOR PRODUCTION NO. 12:**  All documents sufficient to identify the

21 date and manner by which you first became aware of the Data Breach.

22     **RESPONSE**:

23

24     **REQUEST FOR PRODUCTION NO. 13:** All documents showing any data

25 security incident that occurred in Defendants' computers, servers, third-party storage, and/or

26 software during the past five (5) years (other than the Data Breach).

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR  97035
Tel: 503-468-5573 | Fax: 503-820-2933

1    **RESPONSE**:

2

3    **REQUEST FOR PRODUCTION NO. 14:**  All documents showing any identity

4    theft or fraudulent activity resulting from the Data Breach obtained or received by you from

5    any source.

6    **RESPONSE**:

7

8    **REQUEST FOR PRODUCTION NO. 15:**  All documents showing whether PII

9    obtained in the Data Breach was posted on the internet, posted on the dark web, or otherwise

10   made publicly available.

11   **RESPONSE**:

12

13   **REQUEST FOR PRODUCTION NO. 16:**  All documents showing any remedies

14   you considered offering or actually did offer to any individual potentially affected by the

15   Data Breach. This request encompasses bids or requests for bids for identity theft monitoring

16   and protection products and insurance products.

17   **RESPONSE**:

18

19   **REQUEST FOR PRODUCTION NO. 17:**  All documents showing all data security

20   training materials that you disseminated, or that were disseminated on your behalf, to your

21   employees, contractors, agents, vendors, developers, or service providers, including manuals,

22   handbooks, instructions, memoranda, training videos, websites, and all other materials

23   derived from or relating to your Computer Network or Computer System.

24   **RESPONSE**:

25

26   ///

---

Page 17 – PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF
          DOCUMENTS TO DEFENDANTS

1  **REQUEST FOR PRODUCTION NO. 18:**  All communications, memoranda,

2  executive summaries, analyses, and reports written by, or at the direction of, or received by,

3  your senior managers or executives concerning your quality assurance program for ensuring

4  companywide compliance with your data security policies, procedures, and practices.

5  **RESPONSE:**

6

7  **REQUEST FOR PRODUCTION NO. 19**:  All documents written by, at the

8  direction of, or received by you concerning your decision(s) whether to make expenditures or

9  allocations (*i.e.*, spend money) or implement upgrades to ensure the security of consumer PII,

10  including any related requests for capital expenditure, annual or other budget submissions or

11  authorizations.

12  **RESPONSE**:

13

14  **REQUEST FOR PRODUCTION NO. 20**:  All documents regarding internal and

15  external audits, assessments, tests, and investigations of your data security practices during

16  the Relevant Time Period.

17  **RESPONSE**:

18

19  **REQUEST FOR PRODUCTION NO. 21**: All documents sufficient to show your

20  organizational structure, including documents regarding your relationship with any parent

21  companies, subsidiaries, and/or affiliates during the Relevant Time Period.

22  **RESPONSE**:

23

24  **REQUEST FOR PRODUCTION NO. 22**:  All documents and communications you

25  provided to or received from any governmental or other organization, regulatory or

26  governmental entity regarding the Data Breach.

Page 18 –  PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF
             DOCUMENTS TO DEFENDANTS

**RESPONSE**:

**REQUEST FOR PRODUCTION NO. 23**

All documents written by, at the direction of, or received by you concerning any notifications, warning, or suggestions, whether from internal or external sources, regarding potential or actual vulnerabilities in your data security system, servers, MOVEit, or process that led, contributed, or may have contributed, to the Data Breach.

**RESPONSE**:

**REQUEST FOR PRODUCTION NO. 24**

All documents relating to your decision to send notification emails or letters to Class Members and/or any third party (including regulatory agencies) regarding the Data Breach, including all communications or internal memoranda about this decision.

**RESPONSE**:

**REQUEST FOR PRODUCTION NO. 25**

All documents relating to all drafts of notices, emails, and letters intended for Class Members or third parties (including regulatory agencies) about the Data Breach and relating to the claims enumerated in the Complaint.

**RESPONSE**:

**REQUEST FOR PRODUCTION NO. 26**

All documents relating to all press releases or public statements issued about the Data Breach and this current Action.

**RESPONSE**:

Page 19 –  PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF
           DOCUMENTS TO DEFENDANTS

**REQUEST FOR PRODUCTION NO. 27**

All documents relating to statements, scripts, or FAQs (frequently asked questions) drafted to provide information to Class Members or third parties (including regulatory agencies) regarding the Data Breach

**RESPONSE**:


**REQUEST FOR PRODUCTION NO. 28**

All documents regarding your assessment, evaluation, knowledge or estimate of the number of Class Members who have suffered, or are likely to suffer fraud, identity theft, or other harm as a result of the Data Breach.

**RESPONSE**:


**REQUEST FOR PRODUCTION NO. 29**

All documents reflecting your policies and procedures for maintaining the confidentiality and security of Class Members' PII on your network, servers, and/or MOVEit.

**RESPONSE**:


**REQUEST FOR PRODUCTION NO. 30**

All documents reflecting any remedial security measures you have taken after the Data Breach, including documents regarding your security enhancements efforts and efforts to prevent future intrusions, and the costs of any such security measures and enhancements.

**RESPONSE**:


///

///

Page 20 –  PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF
        DOCUMENTS TO DEFENDANTS

**REQUEST FOR PRODUCTION NO. 31**

All documents relating to your policies and procedures for the maintenance, retention and destruction of PII that you collect and maintain.

**RESPONSE**:


**REQUEST FOR PRODUCTION NO. 32**

Each version of privacy policies regarding the security of PII provided to or by you during the Relevant Time Period.

**RESPONSE**:


**REQUEST FOR PRODUCTION NO. 33**

All documents, including internal presentations, regarding (a) possible cybersecurity threats, (b) your data security, and (c) your information technology infrastructure implemented by you during the Relevant Time Period

**RESPONSE**:


**REQUEST FOR PRODUCTION NO. 34**

All documents sufficient to identify all persons who were responsible for the development and implementation of the procedures regarding the protection of PII, and who employed those individuals.

**RESPONSE**:


**REQUEST FOR PRODUCTION NO. 35**

All documents showing your requested financial budget for data security, the actual financial budget received for data security, expenditures, allocations, and staffing dedicated to data security during the Relevant Time Period.

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR  97035
Tel: 503-468-5573 | Fax: 503-820-2933

1    **RESPONSE**:

2

3    **REQUEST FOR PRODUCTION NO. 36**

4    All insurance policies that relate to your insurance coverage for the Data Breach,

5    including documentation showing the amount left in each policy.

6    **RESPONSE**:

7

8    **REQUEST FOR PRODUCTION NO. 37**

9    All documents relating to your insurance claims related to the Data Breach.

10

11    **RESPONSE**:

12

13    **REQUEST FOR PRODUCTION NO. 38**

14    All documents regarding the costs you have incurred as a result of the Data Breach.

15    **RESPONSE**:

16

17    **REQUEST FOR PRODUCTION NO. 39**

18    All documents, including any contracts, for or regarding credit monitoring or identity

19    theft services you offered to victims of the Data Breach

20    **RESPONSE**:

21

22    **REQUEST FOR PRODUCTION NO. 40**

23    All documents sufficient to show all Class Members who signed up for any credit

24    monitoring or identity theft services you offered to victims of the Data Breach.

25    **RESPONSE**:

26

---

Page 22 –   PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF
           DOCUMENTS TO DEFENDANTS

**REQUEST FOR PRODUCTION NO. 41**

All contracts or agreements entered between (i) Defendants; and (ii) Defendants and Plaintiffs.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 42**

All documents and communications regarding your compliance with (or variance from) FTC guidelines establishing reasonable data security practices for businesses.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 43**

Any and all indemnity agreements, tolling agreements, and/or joint defense agreements which might cover, address, or concern your liability to Plaintiffs and the Class regarding the allegations in the Complaint.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 44**

All documents relating to training your agents, vendors, employees, servants, and/or representatives on the protection of PII during the Relevant Time Period.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 45**

All documents as a result of any claim made by any other person or entity, other than Plaintiff, against you regarding unlawful access or disclosure of PII information in the last 10 years.

**RESPONSE:**

Page 23 — PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS

**REQUEST FOR PRODUCTION NO. 46**

All documents related to any wrongful disclosure or attempted wrongful access or disclosure of PII information in the last 5 years, including, but not limited to, Data Breaches or any Cyber Security Incidents.

**RESPONSE**:


**REQUEST FOR PRODUCTION NO. 47**

All scripts utilized by Defendants and/or their employees to discuss the Data Breach with potential victims who may contact Defendants about the Data Breach.

**RESPONSE**:


DATED this 13th day of September, 2023.


Respectfully Submitted,


Paul B. Barton, OSB No. 100502
Trial Attorney
Alex Graven, OSB No. 153443
**OLSEN BARTON LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR 97035
Telephone: 503-468-5573
paul@olsenbarton.com
alex@olsenbarton.com

///
///
///
///
///

Page 24 –   PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF
            DOCUMENTS TO DEFENDANTS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

William B. Federman
(pro hac vice to be filed)
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Telephone: (405) 235-1560
Facsimile: (405) 239-2112
wbf@federmanlaw.com

Jennifer S. Czeisler
(pro hac vice to be filed)
**STERLINGTON PLLC**
One World Trade Center
85th Floor
New York, New York 10007
Tel: (212) 433-2993
Email: jen.czeisler@sterlingtonlaw.com
***Attorneys for Plaintiffs***

Page 25 –   PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF
DOCUMENTS TO DEFENDANTS

1

## ATTORNEY CERTIFICATE OF SERVICE

2      I hereby certify that I accomplished service of a true and correct copy of

3   **PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

4   **TO DEFENDANTS** on the parties below on the date and in the manner indicated:

5   Oregon Department of Transportation          ☐ Electronic Service to the email address
6   355 Capitol Street NE, MS11                      recorded on the date of service in the
    Salem, Oregon 97301-3871                         Court's OJD eFiling system (eServe
7                                                     only)
                                                  ☐ First-Class U.S. Mail, Postage Prepaid
8                                                 ☒ Hand-Delivery – Process Server
9                                                 ☐ Fax Service to
                                                  ☐ Courtesy Email to
10

11  Progress Software Corporation                ☐ Electronic Service to the email address
    c/o Corporation Service Company                  recorded on the date of service in the
12  1127 Broadway Street NE, Suite 310               Court's OJD eFiling system (eServe
    Salem, Oregon 97301                              only)
13                                                ☐ First-Class U.S. Mail, Postage Prepaid
14                                                ☒ Hand-Delivery – Process Server
                                                  ☐ Fax Service to
15                                                ☐ Courtesy Email to
16

17      DATED:  September 13, 2023

18                                      OLSEN BARTON LLC

19

20                                      _____
                                        Paul B. Barton, OSB No. 100502
21                                      Trial Attorney
                                        Alex Graven, OSB No. 153443
22                                      **OLSEN BARTON LLC**
                                        4035 Douglas Way, Suite 200
23                                      Lake Oswego, OR 97035
                                        Telephone: 503-468-5573
24                                      paul@olsenbarton.com
                                        alex@olsenbarton.com
25                                      *Attorneys for Plaintiffs*

26

Page 1 – ATTORNEY CERTIFICATE OF SERVICE

1

2

3

4            IN THE CIRCUIT COURT OF THE STATE OF OREGON

5                    FOR THE COUNTY OF MARION

6   CAERY EVANGELIST, Ph.D. and          Case No.: 23CV34800
    BRIAN J. ELS, Ph.D., on behalf of
7   themselves and all others similarly    **PLAINTIFFS' FIRST REQUESTS**
                                            **FOR ADMISSION TO**
    situated,                              **DEFENDANTS**
8

9                   Plaintiffs,

10            v.

11  STATE OF OREGON, by and through its
    Department of Transportation; AND
12  PROGRESS SOFTWARE
    CORPORATION,
13

14                  Defendants.

15  **TO:    The State of Oregon, by and Through its Department of Transportation, 355**
           **Capitol Street NE, MS11, Salem, Oregon 97301-3871; and**
16
           **Progress Software Corporation, c/o Corporation Service Company, 1127**
17         **Broadway Street NE, Suite 310, Salem, Oregon 97301**

18         Pursuant to Oregon Rule of Civil Procedure ("ORCP") 45, Plaintiffs Caery

19  Evangelist, Ph.D. and Brian J. Els, Ph.D. (collectively, "Plaintiffs"), hereby request that

20  Defendants the State of Oregon, by and through its Department of Transportation ("ODOT"),

21  and Progress Software Corporation ("PSC") (collectively, "Defendants"), produce for

22  inspection and copying to the undersigned counsel, the following documents that are in their

23  actual or constructive possession, custody or control, **45 days after service of the summons**

24  **and the complaint**. *See* ORCP 45(B). Admissions should be made in accordance with the

25  definitions and instructions set forth below.

26  ///

Page 1 – PLAINTIFFS' FIRST REQUESTS FOR ADMISSION TO DEFENDANT

1              **DEFINITIONS**

2          Each word or term used in these Requests is intended to have the broadest meaning

3    permitted under the Oregon Rules of Civil Procedure and the Local Rules of this Court.

4    Furthermore, these Requests shall be interpreted by reference to the definitions set forth

5    below:

6          1.     As used herein, the terms **"and"** and **"or"** shall be construed either

7    conjunctively or disjunctively in an inclusive manner to bring within the scope of these

8    Requests any information which might otherwise be construed to be outside their scope.

9    **"Including"** shall be understood to mean including but not limited to. Singular nouns and

10   pronouns shall be deemed to include the plural, and vice versa, and masculine, feminine, and

11   neutral nouns and pronouns shall be deemed to include one another, wherever appropriate.

12         2.     The terms **"any,"** **"all,"** and **"each"** shall each mean and include the other.

13         3.     **"Class"** or **"Class Member"** shall mean all individuals in the United States and

14   its Territories whose Personally Identifiable Information (as defined below) may have been

15   compromised by the Data Breach (as defined below).

16         4.     **"Complaint"** means the operative Complaint filed on August 25, 2023, in the

17   action captioned *Evangelista et al. v. State of Oregon*, Case No. No. 23CV34800.

18         5.     **"Computer Network"** means the data network that connects the computer,

19   virtual, and all other digital components of Oregon Department of Transportation's software

20   systems.

21         6.     **"Computer Systems"** includes any Oregon Department of Transportation's

22   servers (whether physical, web-based, or virtual), desktop computer, laptop computer, tablet,

23   mobile phone, networking equipment, backup storage, internet site, intranet site, and the

24   software, programs, applications including Oregon Department of Transportation's platforms,

25   scripts, operating systems, or databases used to control, access, add, delete, or modify any data

26   or information stored on any of the foregoing non-exclusive list.

---

Page 2 – PLAINTIFFS' FIRST REQUESTS FOR ADMISSION TO DEFENDANT

7.    **"Cyber Security Incident"** means any malicious act or suspicious event that threatened, or was an attempt to threaten, the security, confidentiality, integrity, or availability of information in or on Oregon Department of Transportation's Computer System or Computer Network.

8.    **"Database"** shall mean a set of data stored in a computer.

9.    **"Data Breach"** means the cybersecurity incident concerning ODOT's computer systems/servers through the third-party software vendor, MOVEit, that ODOT learned of on June 1, 2023, in which an unauthorized party was able to access the Personally Identifiable Information belonging to Plaintiffs' and the Class.

10.    **"Data Security"** means protection against unauthorized access, transfer, modification, misuse, or destruction of data held by, or on behalf of Defendants. It also means Defendants' policies, practices, methods, and procedures concerning the intended protection against unauthorized access, transfer, modification, misuse, or destruction of data.

11.    **"Data Security Incident"** means any unauthorized access or attempted unauthorized access to your computer systems or networks or any other security breach involving Personally Identifiable Information stored by you regardless of whether any suspected loss or misuse of stolen data occurred.

12.    **"Defendants"** shall mean ODOT and PSC and their officers, directors, trustees, agents, employees, staff members, and paid consultants; any predecessor, successor, parent, subsidiary, division, franchise, or affiliate; and any person acting on behalf of any of the aforementioned.

13.    **"Including"** means "including but not limited to" and "including without limitation."

14.    **"MOVEit"** shall mean the managed file transfer software created, manufactured, produced, maintained, and/or otherwise controlled by PSC.

Page 3 – PLAINTIFFS' FIRST REQUESTS FOR ADMISSION TO DEFENDANT

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR  97035
Tel: 503-468-5573 | Fax: 503-820-2933

15.    The "**State of Oregon, by and through its Department of Transportation**" or "**ODOT**," shall mean its officers, directors, trustees, agents, employees, staff members, and paid consultants; any predecessor, successor, parent, subsidiary, division, franchise, or affiliate; and any person acting on behalf of any of the aforementioned.

16.    "**Personally Identifiable Information**," or "**PII**," shall mean all information that can be used to identify an individual and includes, but is not limited to, names, mailing addresses, license or identification numbers, and the last four digits of Social Security numbers.

17.    "**Plaintiffs**" shall mean Caery Evangelist, Ph.D. and Brian J. Els, Ph.D.

18.    "**Progress Software Corporation**" or "**PSC**," shall mean its officers, directors, trustees, agents, employees, staff members, and paid consultants; any predecessor, successor, parent, subsidiary, division, franchise, or affiliate; and any person acting on behalf of any of the aforementioned.

19.    The terms "**relating to**," "**relate to**," "**referring to**," "**refer to**," "**reflecting**," "**reflect**," "**regard(s)**," "**regarding**," "**concerning**," and/or "**concerns**" shall mean evidencing, regarding, concerning, discussing, embodying, describing, summarizing, containing, constituting, showing, mentioning, reflecting, pertaining to, dealing with, relating to, referring to in any way or manner, or in any way logically or factually, connecting with the matter described in that paragraph of these demands, including documents attached to or used in the preparation of or concerning the preparation of the documents.

20.    "**You**" and "**Your**," means Defendants and their officers, directors, employees, agents, or anyone acting or purporting to act on their behalf.

## RULES OF CONSTRUCTION

1.    The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

///

Page 4 – PLAINTIFFS' FIRST REQUESTS FOR ADMISSION TO DEFENDANT

1    2.    The use of any tense of any verb shall also include within its meaning all other

2 tenses of that verb.

3    3.    The singular form of a noun or pronoun includes the plural form and vice

4 versa.

5    4.    The terms "all", "any", and "each" shall each be construed as encompassing

6 any and all.

7    **INSTRUCTIONS**

8    1.    Pursuant to ORCP 45, you are directed to admit, deny, or submit a written

9 objection to the following statements within **45 days after service of the summons and the**

10 **complaint**. If an objection is made, the reasons therefore shall be stated. The answer shall

11 specifically admit or deny the matter set forth and detail the reasons why the answering party

12 cannot truthfully admit or deny the matter. A denial shall fairly meet the substance of the

13 requested admission, and when good faith requires that you qualify your answer or deny only

14 a part of the matter for which an admission is requested, you must specify so much of it as is

15 true and qualify or deny the remainder.

16    2.    You may not give lack of information or knowledge as a reason for failure to

17 admit or deny unless you state that you undertook a reasonable inquiry and that the information

18 known or readily obtainable by you is insufficient to enable you to admit or deny.

19    **FAILURE TO SERVE A WRITTEN ANSWER OR OBJECTION WITHIN**

20 **THE TIME ALLOWED BY ORCP 45 B WILL RESULT IN ADMISSION OF THE**

21 **FOLLOWING REQUESTS.**

22    **REQUESTS FOR ADMISSION**

23    **REQUEST FOR ADMISSION NO. 1:**    Admit a Data Breach occurred on or before

24 June 1, 2023, in which unauthorized individuals may have accessed Plaintiffs' and the

25 Class's PII.

26

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR  97035
Tel: 503-468-5573 | Fax: 503-820-2933

1    **RESPONSE:**

2

3    **REQUEST FOR ADMISSION NO. 2:**  Admit you were responsible for keeping

4    Plaintiffs and Class Members PII confidential while it was in your possession.

5    **RESPONSE:**

6

7    **REQUEST FOR ADMISSION NO. 3:**  Admit Plaintiffs' and Class Members' PII

8    was accessed during the Data Breach by unauthorized person(s).

9    **RESPONSE:**

10

11   **REQUEST FOR ADMISSION NO. 4:**  Admit that the Data Breach could have been

12   prevented.

13   **RESPONSE:**

14

15   **REQUEST FOR ADMISSION NO. 5:**  Admit you did not offer credit monitoring

16   or identity theft protection services to the individuals potentially impacted by the Data

17   Breach.

18   **RESPONSE:**

19

20   **REQUEST FOR ADMISSION NO. 6:**   Admit the information compromised as

21   result of the Data Breach includes names, license or identification numbers, and the last four

22   digits of Social Security numbers.

23   **RESPONSE:**

24

25   **REQUEST FOR ADMISSION NO. 7:**  Admit you did not mail data breach

26   notification letters to individuals potentially impacted by the Data Breach.

Page 6 – PLAINTIFFS' FIRST REQUESTS FOR ADMISSION TO DEFENDANT

1    **RESPONSE:**

2

3    **REQUEST FOR ADMISSION NO. 8:**  Admit you took no affirmative steps to

4    retrieve the stolen PII.

5        **RESPONSE:**

6

7    **REQUEST FOR ADMISSION NO. 9:**  Admit you took no affirmative steps to

8    mitigate the harm caused to Plaintiffs and the Class.

9        **RESPONSE:**

10

11    **REQUEST FOR ADMISSION NO. 10:** Admit that by obtaining, collecting, using,

12    and deriving a benefit from Plaintiffs' and Class Members' PII, Defendants were responsible

13    for protecting Plaintiffs' and Class Members' PII from disclosure.

14    **RESPONSE:**

15

16    **REQUEST FOR ADMISSION NO. 11:**  Admit you had obligations created by state

17    laws, reasonable industry standards, common law, and state statutory law to keep PII

18    confidential and to protect such PII from unauthorized access.

19    **RESPONSE:**

20

21    **REQUEST FOR ADMISSION NO. 12:** Admit you knew the importance of

22    safeguarding PII.

23    **RESPONSE:**

24

25    ///

26    ///

---

**Olsen Barton LLC**
4035 Douglas Way, Suite 200
Lake Oswego, OR  97035
Tel: 503-468-5573 | Fax: 503-820-2933

1    **REQUEST FOR ADMISSION NO. 13:** Admit you knew the foreseeable

2 consequences that would occur if Plaintiffs' and Class Members' PII was stolen.

3    **RESPONSE:**

4

5    **REQUEST FOR ADMISSION NO. 14:** Admit it was foreseeable that Plaintiffs and

6 Class Members would need to obtain identity theft protection as a result of a Data Breach.

7

8    **RESPONSE:**

9

10    **REQUEST FOR ADMISSION NO. 15:** Admit you knew after the Data Breach that

11 other organizations that have had data breaches offered identity theft protection to individuals

12 whose information was exposed.

13

14    **RESPONSE:**

15

16    **REQUEST FOR ADMISSION NO. 16:** Admit you believe Plaintiffs and the Class

17 are at risk for present and continuing identity theft.

18    **RESPONSE:**

19

20    **REQUEST FOR ADMISSION NO. 17:** Admit the disclosure of the PII at issue was

21 a Cyber Security Event involving Defendant's and/or MOVEit's Computer network(s) and/or

22 Computer Systems resulting from MOVEit's cyber security being infiltrated by an

23 unauthorized third-party and lapses in security oversight by Defendants.

24    **RESPONSE:**

25

26

Page 8 – PLAINTIFFS' FIRST REQUESTS FOR ADMISSION TO DEFENDANT

1    **REQUEST FOR ADMISSION NO. 18:** Admit the PII at issue has monetary value.

2    **RESPONSE:**

3

4

5    DATED this 13th day of September, 2023.

6                                                        Respectfully Submitted,

7

8                                                        Paul B. Barton, OSB No. 100502
                                                         Trial Attorney
9                                                        Alex Graven, OSB No. 153443
                                                         **OLSEN BARTON LLC**
10                                                       4035 Douglas Way, Suite 200
                                                         Lake Oswego, OR 97035
11                                                       Telephone: 503-468-5573
                                                         paul@olsenbarton.com
12                                                       alex@olsenbarton.com

13

14                                                       William B. Federman
                                                         (pro hac vice to be filed)
15                                                       **FEDERMAN & SHERWOOD**
                                                         10205 N. Pennsylvania Ave.
16                                                       Oklahoma City, OK  73120
                                                         Telephone: (405) 235-1560
17                                                       Facsimile: (405) 239-2112
                                                         wbf@federmanlaw.com
18

19                                                       Jennifer S. Czeisler
                                                         (pro hac vice to be filed)
20                                                       **STERLINGTON PLLC**
                                                         One World Trade Center
21                                                       85th Floor
                                                         New York, New York 10007
22                                                       Tel: (212) 433-2993
                                                         Email: jen.czeisler@sterlingtonlaw.com
23

24                                                       ***Attorneys for Plaintiffs***

25

26

---

Page 9 – PLAINTIFFS' FIRST REQUESTS FOR ADMISSION TO DEFENDANT

# ATTORNEY CERTIFICATE OF SERVICE

I hereby certify that I accomplished service of a true and correct copy of

**PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANTS** on

the party below on the date and in the manner indicated:

Oregon Department of Transportation
355 Capitol Street NE, MS11
Salem, Oregon 97301-3871

☐ Electronic Service to the email address recorded on the date of service in the Court's OJD eFiling system (eServe only)
☐ First-Class U.S. Mail, Postage Prepaid
☒ Hand-Delivery – Process Server
☐ Fax Service to
☐ Courtesy Email to

Progress Software Corporation
c/o Corporation Service Company
1127 Broadway Street NE, Suite 310
Salem, Oregon 97301

☐ Electronic Service to the email address recorded on the date of service in the Court's OJD eFiling system (eServe only)
☐ First-Class U.S. Mail, Postage Prepaid
☒ Hand-Delivery – Process Server
☐ Fax Service to
☐ Courtesy Email to

DATED:  September 13, 2023

OLSEN BARTON LLC

Paul B. Barton, OSB No. 100502
Trial Attorney
Alex Graven, OSB No. 153443
4035 Douglas Way, Suite 200
Lake Oswego, OR 97035
Telephone: 503-468-5573
paul@olsenbarton.com
alex@olsenbarton.com

*Attorneys for Plaintiffs*

Page 1 – ATTORNEY CERTIFICATE OF SERVICE



OLSEN BARTON LLC
ATTORNEYS
4035 Douglas Way, Suite 200
Lake Oswego, OR 97035

Progress Software Corporation
c/o Corporation Service Company
1127 Broadway Street NE, Suite 310
Salem, OR 97301